ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
CALENDAR: D
PAGE 1 of 47
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| DAVID ISRAEL, | ) | Case No.  2017- L-006026 |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | Hon. Janet Adams Brosnahan |
| MICHAEL BUCON, individually and as agent of | ) | |
| James Adams and Xtreme Protection Services, LLC | ) | |
| JAMES ADAMS, individually and as agent of | ) | |
| Xtreme Protection Services, LLC and | ) | |
| XTREME PROTECTION SERVICES, LLC, | ) | |
| Defendants. | ) | Calendar D |

### AMENDED VERIFIED THIRD AMENDED COMPLAINT

NOW COMES the Plaintiff, David Israel ("David"), by and through his attorneys, Weissberg and Associates, Ltd, and as David's *Amended Verified Third Amended Complaint* against Michael Bucon, James Adams and Xtreme Protection Services, LLC, states as follows:

### PARTIES

1.      Plaintiff, David Israel, is a resident of Cook County, Illinois who resides in the Gold Coast neighborhood of Chicago, Illinois and maintains an office at 3100 Dundee Road, Northbrook, IL.  David also owned a residence in Highland Park, Illinois during the time of the actions detailed herein that he subsequently sold in late 2015.

2.      Defendant, James Adams ("Adams"), is an individual residing in Cook County, Illinois.  Adams is a licensed Private Security Contractor in the State of Illinois and, upon information and belief, is the manager and member of Xtreme Protection Services, LLC ("Xtreme").  At all relevant times herein, Adams provided security services to customers of Xtreme.

3.      Defendant, Xtreme Protection Services, LLC, is an Illinois Limited Liability Company with its principal office located at 21720 W Long Grove Rd #C #306, Deer Park, IL 60010.  This address, registered with the Illinois Secretary of State's Office as Xtreme's principal office, is a

EXHIBIT A

United Parcel Service (UPS) mailbox.  Upon information and belief, Xtreme does not maintain a brick and mortar storefront nor does Xtreme maintain functional website.  Xtreme is a licensed Private Security Contractor Agency, whose full-time Illinois licensed private security licensee-in-charge, a licensing requirement under Article 20 of the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 (225 ILCS 447/25-15), is Adams.

4.      Defendant, Michael Bucon ("Bucon"), is an individual residing in Cook County, Illinois.  Bucon, at all times relevant herein, was an agent of Adams or Xtreme.  Bucon was indicted by the State of Illinois in *People of the State of Illinois v. Bucon,* in the Circuit Court of Cook County, Case No. 17 CR 956 ("Bucon Criminal Case") in connection with conduct pleaded herein.  On April 21, 2017, Bucon pleaded guilty in the Bucon Criminal Case to criminal trespass, attempt cyber stalking, and attempt cyber stalking.  A copy of the transcript from sentencing proceedings in the Bucon Criminal Case is attached hereto as **Exhibit 1**.

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-00626
PAGE 2 of 47

## JURISIDICTION AND VENUE

5.      Jurisdiction is proper pursuant to 735 ILCS 5/2-209 as all defendants are domiciled in the State of Illinois or conduct business in the State of Illinois.

6.      Venue is proper because the events giving rise to the causes of action occurred, in substantial part, in Cook County, Illinois.

## FACTS COMMON TO ALL COUNTS

7.      A long-simmering family feud is playing out in the Circuit Court of Cook County in *Israel v. Israel,* Cook County Case No. 2012 L 3464 (McGrath, J.) ("Trust Case").   In that lawsuit, Harey Israel, a son of the late Aaron Israel (once an Oak Street property owner), says his sister, Diane Israel, should be removed as trustee of their father's trust because she can't be trusted to oversee their

late father's affairs. Trial has been scheduled for October 23, 2017 and David is a crucial witness in that trial.

8.      In the summer of 2015 Davd's office, his residence and his cars were bugged by the Defendants and from a period of July 2015 through August 2015.  David also received multiple text messages from an unknown phone number, (847) 379-1068, that were sent by the Defendants to David to threaten and harass him, potentially from testifying in the Trust Case.

9.      On April 16, 2014, Ronan Moyal ("Moyal") of Gladio Group Security arrived at David's Office and informed him that he had been hired by Diane to conduct surveillance on David.  Moyal informed that David that his phone, David's Office, his Highland Park residence and the River North condominium are possibly bugged.

10.     On April 18, 2014, Moyal returned to conduct a search for listening devices in David's office and found an electronic surveillance device with a 9 volt battery under David's desk.  A picture of the electronic listening device found underneath David's desk is attached hereto as **Exhibit 2**.

11.     On April 23, 2014, David's brother Harey Israel ("Harey") contacted Sergeant Strickland of the Northbrook Police Department and at 4:30 PM, the Northbrook Police arrived at David's office with an evidence technician and took pictures of the electronic listening device.  An investigation ensued but no arrests were made.

12.     On or around May 2015, Bucon, an employee or agent of Xtreme, entered into the building of 3100 Dundee Road, Suite Number 308, in Northbrook, Illinois, ("David's Office"), without consent.  See **Exhibit 1 at p. 10**.

13.     While in Suite 308, Bucon placed two eavesdropping devices without consent.  Id.

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-00626
PAGE 3 of 47

14.     On July 14, 2015 at around 9:30 PM David was driving from Waukegan, IL to Chicago, IL when he received a text message from an unknown person using the telephone number (847) 379-1068 stating something to the effect of "Hello, how are you doing?"

15.     David responded to the text message that he did not know who that was, and then over the course of two months he received multiple text messages from (847) 379-1068 disclosing time-sensitive information that led David to reasonably believe that he was being harmed an in threat of immediate physical danger.  Screenshots of the images along with the date and time stamp of the text messages are attached hereto as **Group Exhibit 3**.

16.     Upon receipt of the second text message stating that "I am your worst nightmare," David was especially considered about his safety and the safety of his adult children and grandchildren.

17.     On July 17, 2017, while David was golfing at the Ravinia Country Club, he got a text message stating "Don't get too tan.  I have a membership here too" from the (847) 379-1068 phone number.

18.     Concerned that he was being followed, David contacted Moyal and relayed the content of the text messages to him.  Moyal trailed David to determine if he was being followed and after trailing David for an extended period of time, informed David that he was not likely being followed but that his car had a tracking device that was beaming his geographical location to unknown persons.

19.     Moyal then searched David's car (a BMW) and found a GPS tracking device attached with a magnet underneath the car's rear fender.  A picture of the GPS devise affixed to David's car is attached hereto as **Exhibit 4.**

20.     When Moyal discovered the GPS devise on David's BMW, David immediately called his brother Alan Israel, who had borrowed David's second car, a Jeep, and was then in Iowa.  David

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 4 of 47

- 4 -

informed Alan about a GPS devise potentially being attached with a magnet to the back of the car. Alan pulled into a gas station and conducted a search of the Jeep and found that at the back of the Jeep underneath the rear-fender was a GPS similar to the one Moyal found on David's BMW.

21.     David contacted the Northbrook Police Department on July 17, 2017 at around 5:30 PM and reported the threatening text messages and the GPS devises on both of his cars to the dispatcher

22.     Officer Johnson of the Northbrook Police Department responded to David's complaint and spoke to him about the text messages and the GPS devises attached to his cars. David informed Officer Johnson about contested matters in probate court regarding his father's estate between him and Diane, and about the police complaint he registered in 2014 regarding the audio bug underneath his desk.

23.     Officer Johnson took photographs of the GPS tracking devise on the BMW that contained within it an AT&T cellular SIM card bearing the number 89014103277703171616.

24.     The GPS tracking devise was a product of the Electroflip brand and was capable of using the internal cellular chip to transmit its location via text message to any cellphone.

25.     On July 19, 2017 at 4:09 PM, David received another text message from the (847) 379-1068 number stating "The flower pot next to the door. I would like you to look at it. Admire it for a moment."

26.     Upon receipt of this text message, David panicked and conducted a thorough search of his Gold Coast Condominium and found no suspicious items in any flower pots. David sent his brother Harey to conduct a search of all flower pots in David's Office and his Highland Park Residence. Harey found no suspicious items in the flower pots in David's Office.

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 5 of 47

- 5 -

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 6 of 47

27.     David also contacted the Northbrook Police Department and Officer Johnson, Sergeant Peterson and Officer Pozniak responded to David's Office and checked the exterior of the building but did not find any flower pots.

28.     The next day, on July 20, 2015, Moyal conducted an internal sweep of David's Office and found another eavesdropping devise in a large planter with artificial plants next to the printer directly outside David's inner office. A picture of the eavesdropping devise found on the planter in David's Office is attached hereto as **Exhibit 5.**

29.     David immediately called the Northbrook Police Department to inform them that he had found the eavesdropping devise in his office.

30.     On July 20, 2017, Detective Meents responded to David's Office and met with David, Harey Israel, Moyal and Rahimzadeh (Moyal's co-worker). David showed Detective Meents the 2 inch by 2 inch listening-devise, who took the devise into evidence after removing the SIM card from the devise. The SIM card was also taken into evidence by the Northbrook Police Department.

31.     On July 21, 2017, after the Northbrook Police Department had confiscated the devise, David received a text from the (847) 379-1068 number telling him "Hope you now have an idea what I have against you. I call and we discuss or I escalate this to another level." **See Group Exhibit 3.** David immediately became nervous upon receiving this text message and believed that his contact with the Northbrook Police Department would lead to retaliatory action against him. He believed his life and his safety were in immediate danger.

32.     On the same day, David received texts from the (847) 379-1068 number saying "P.S. All devices have audio recording capability from a remote location." David became concerned that there were even more audio recording devices around him and that those stalking him had access to all his private real estate properties to install multiple listening devises.

- 6 -

33.     On that same day, David received a text message saying "A bit hot to be wearing that shirt don't you think David?  Let's see where you end up I'm not too far." These texts placed David in immediate apprehension because he believed that someone was in close vicinity to him and was stalking him as he walked in a long-sleeve shirt on a hot day.  Having already contacted the Northbrook Police Department and retained private security contractors, David felt helpless about any other steps he may take to safeguard his privacy and to keep himself safe.

34.     On July 23, 2015, David receives at text message from (847) 379-1068 saying "We are all coming for you David."  David, in attempting to respond to Harey, mistakenly responds here, "Just got this. I'm in a meeting until 3:15 and we'll talk then."Bucon replies "That's okay. I'll continue to listen."  David was especially concerned that private business meetings and phone calls in his David's Office and private personal matters in his Gold Coast Condominium and Highland Park Residence were being recorded or bugged.

35.     In late-July of 2015, David met with lawyer Michael Ettinger at David's Office to discuss the stalking, the GPS devises, and the text-messages to assess potential legal action.  They discussed filing a claim for Intentional Infliction of Emotional Distress against Diane who they believed was behind the intimidation and harassment.

36.     On August 5, 2015, Ettinger received text messages from phone number (847) 665-9883 similar to the text messages that David was receiving.  Etinger emailed David that he received a text "Whose your friend who likes to play?" amongst others, and that he was having his investigators look into the phone number.

37.     On August 10, 2015, Ettinger spoke with Officer Meents regarding the text messages received by him and provided him with contact information of his private investigator James Miller

who had traced the phone number as being registered to a Deborah Berg of 254 N. Branch, Glenview, IL.

38.     David became increasingly paranoid about being followed and about his safety. David talked to his brother-in-law, Gary Kalter, a former police officer and upon his advice began taking tactical defense classes with Vanguard Training in Rosemont, IL from a former Delta Force instructor.

39.     To ensure that he was safe, he altered his lifestyle and would communicate his plans for the following day to his brother Harey the night before, including when and where he was traveling to in order for Harey to monitor his location and his safety.

40.     David also stopped visiting his children and grand-children as often as used to because he was concerned that an attack on him when they were present would end up hurting his family members.

41.     David also applied for a gun-license and a concealed carry permit to defend himself.

42.     On August 11, 2015, David received the following text from (847) 379-1068, stating "hey David hope your week is going well, wanted to give you a little more information prior to us meeting . by now you have attempted to uncover all the little ears that we have places…..but I'm willing to bet you missed several….there was a teddy bear sent to you awhile back from a cancer center……you might want to open the bear up, a big surprise awaits…..we know everything and have been listening for quite awhile…keep that in mind, see you soon"

43.     Prior to August 11, 2015, David had received a teddy bear from a cancer center thanking him for his charitable donation. David had placed this teddy bear on a credenza in his office near his desk. On August 3, 2015, David and Harey had superficially searched the pink teddy bear on the credenza but did not feel anything hidden in the stuffing. They became concerned that the

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 8 of 47

teddy bear could have anthrax or other poisonous substance hidden within it, not just an audio recording devise.

44.     Later that day, Moyal came to David's office and cut open the teddy bear and inside the teddy bear was a listening devise which contained an AT&T cellular SIM card number 89014103278021134450.  A copy of the pink teddy bear on the credenza with the listening devise inside it is attached hereto as **Exhibit 6.**

45.     On August 18, 2015, David was served with a summons and complaint alleging Intentional Infliction of Emotional Distress ("IIED") in the case captioned *Israel v. Israel,* Case No. 2015 L 007862 filed in the Circuit Court of Cook County, Illinois.  This case was later voluntarily dismissed by Diane.

46.     David was surprised to see IIED claim filed against him because in his late-July meeting with Ettinger there was discussion about filing an IIED claim against Diane.  After that meeting Ettinger had received text messages from an unknown number, supra ¶ 34.

47.     Around this time, David stopped talking about any legal issues in David's Office or the Highland Park residence and would visit public places to discuss any legal matters.

48.     On August 24, 2015, Officer Meents of the Northbrook Police Department received from AT&T information responding to a subpoena he had sent them regarding the (847) 379-1068 number and the SIM cards from the GPS tracking devise on David's BMW.  The SIM card had from the period of July 6, 2015 to July 17, 2015:

    a.    2,033 calls/texts that originated from the GPS tracker and terminated to 312-953-0300

    b.   651 calls/texts that originated from the GPS tracker and terminated to 262-422-1380.

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 9 of 47

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 10 of 47

c.   98 calls/texts that originated from 312-953-0300 and terminated to the GPS tracker

d.   6 calls/texts that originated from 288-090-0909 and terminated to the GPS tracker

49.   Officer Meents then sent subpoenas to AT&T and Verizon Wireless regarding the phone numbers mentioned above.  Verizon and AT&T responded to the subpoenas on September 2, 2015 and provided that 312-953-0300 belonged to Michael Bucon with an address of 6719 S. 91st St., Oak Lawn, Illinois.  Verizon Wireless subpoena-response shows phone 262-422-1380 belonged to Michael Bucon with an address of 1600 Michigan Blvd., Racine, Wisconsin.

50.   On September 3, 2015, Officer Meents and Detective Schultz responded to 6719 W. 91st St. in Oak Lawn.  They knocked on the front door of the residence and were met by Michael Bucon who agreed to speak with them.  When the officers asked him what his phone number was, Bucon stated 312-953-000.  When asked if there was any reason why his phone was making contact with the GPS tracker on the bottom of David's BMW, Bucon confessed that his boss had told him to do so.  He stated his boss could explain the contact in more detail to the officers.

51.   Bucon stated his boss was James Adams  and his phone number was 941-234-6128. He stated he had been working for Adams' company, Xtreme Protection Services, LLC.

52.   Bucon subsequently fled the country and went to Mexico.  Officer Meents traced Bucon's Facebook activity and the IP address registered with the activity belonged to a large Mexican internet services provider.

53.   On April 4, 2016, the Department of Homeland Security contacted Officer Meents and informed him that Bucon was on a flight from Mexico to Chicago-O'Hare International Airport. Officer Delderfield of the O'Hare tactical unit took custody of Bucon and arrested him and transported him to 26th and California.

54.     Bucon pleaded guilty in the Bucon Criminal Case to criminal trespass, attempt cyber stalking, and attempt cyber stalking.  See **Exhibit 1**.

### COUNT I:  EAVESDROPPING IN VIOLATION OF 720 ILCS 5/14-2

55.     Plaintiff hereby incorporates all prior allegations as if fully pleaded herein.

56.     720 ILCS 5/14-6 titled "Civil Remedies to Injured Parties" provides for a private cause of action against all parties who commit an act of eavesdropping as defined in 720 ILCS 5/14-2.

57.     Using a recording device in a surreptitious manner for the purpose of overhearing any private conversation without the consent of all parties is a violation of the Illinois Eavesdropping Law, as amended by Public Act 98-1142 in 2014.

58.     Bucon, an employee of Xtreme, pleaded guilty to cyber-stalking, stalking and criminal trespass to real property in his criminal case, *People v. Bucon*, Case No. 17 CR 956, and admitted and pleaded guilty to installing listening devices and overhearing private conversations without the consent of all parties.

59.     Bucon was acting as Adams and Xtreme's agent and had no independent reason to stalk David and install listening devices in David's premises and the car.

60.     Pursuant to 720 ILCS 5/14-6, Defendants are liable for all actual damages suffered by David.

61.     David's actual damages included the retention of cyber-security experts, private detectives and attorneys and resulted in damages in excess of $30,000.00.

WHEREFORE, Plaintiff, David Israel, prays for the entry of a judgment against Defendants for an amount not less than $30,000; and for such other relief as this Court deems just and proper.

### COUNT II:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62.     Plaintiff herein realleges all prior allegations as if fully stated herein.

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 11 of 47

- 11 -

63.     Defendants' conduct in continuously stalking David, eavesdropping on private conversations without consent, and sending threatening text messages to David comprises extreme and outrageous behavior and goes beyond oppressions and petty trivialities.

64.     Defendants intended and knew that extreme distress will result from their actions but went ahead with their actions in a scheme to intimidate and harass David.

65.     The continuous stalking and text messages caused David extreme emotional distress and led him to change his lifestyle in the following ways:

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 12 of 47

a.  He applied for a gun permit and a license for a conceal and carry;

b.  He took tactical self-defense classes with Vanguard Training to ensure his safety if attacked;

c.  He limited his interactions with his family and friends in order to prevent them from any violence that may ensue because of him;

d.  He reported all his daily activity and meetings to Harey Israel beforehand so that he could be tracked and monitored for safety.

e.  He had to retain security experts to find the listening devises and provide protection services to him.

f.  He had to have all legal matters be discussed outside his office and his residence in order to prevent eavesdroppers from using that information against him.

66.     David has lived in a state of constant anxiety and is apprehensive for his safety and for the safety of those around him.  Because of the threats and the stalking that he has had to endure, he is a state of constant vigilance and anxiety.

WHEREFORE, Plaintiff, David Israel, prays for the entry of a judgment against Defendants for nominal actual damages and for punitive damages to be determined by a jury but not less than $50,000.00; and for such other and further relief as this Court deems just and proper.

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 13 of 47

## COUNT III:  OUTRAGE

67.     Plaintiff herein realleges all prior allegations as if fully stated herein.

68.     Defendants' conduct in continuously stalking David, eavesdropping on private conversations without consent, and sending threatening text messages to David comprises extreme and outrageous behavior and goes beyond all bounds of decency.

69.     Defendants' actions resulted in David to be without any expectation of privacy at any point of the day for a period of two months.

WHEREFORE, Plaintiff, David Israel, prays for the entry of a judgment against Defendants for nominal actual damages and for punitive damages to be determined by a jury, but not less than $50,000.00; and for such other and further relief as this Court deems just and proper.

## COUNT IV:  RECOVERY OF CIVIL DAMAGES PURSUANT TO 18 U.S.C. § 2520 (FEDERAL WIRETAPPING ACT)

70.     Plaintiff herein realleges all prior allegations as if fully stated herein.

71.     Section 2520(a) of the Federal Wiretapping Act provides that "any person whose wire, oral or electronic communication is intercepted, disclosed or intentionally used in violation on this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

72.     Section 2520(c) of the Federal Wiretapping Provides that the damages that may be recovered by a plaintiff brining a civil cause of action in the amount that is the greater of: (i) the sum of actual damages suffered by the plaintiff and any profits made by the violator, or (ii) statutory damages of $100 a day for each day of the violation or $10,000.

73.     Bucon, Adamas and Xtereme intercepted David's phone calls and conversations at 3100 Dundee Road for a period exceeding 90 days from May 2015 to July 2015.

74.     David's actual damages included the retention of cyber-security experts, private detectives and attorneys and resulted in damages in excess of $30,000.00.

WHEREFORE, Plaintiff, David Israel, prays for the entry of a judgment against Defendants in an amount not less than $30,000, and for such other relief as this Court deems just and proper.

## COUNT V: INTRUSION UPON SECLUSION

75.     Plaintiff herein realleges all prior allegations as if fully stated herein.

76.     The Illinois Supreme Court recognizes that one who intentionally intrudes, physically or otherwise, upon the solitude or section of another or his private affairs or concerns, is subject to the liability to the other for invasion of his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offense to a reasonable person."

77.     The place of recording devices on the Northbrook Property and David's car was unauthorized, objectively unreasonable, and was necessarily meant to intrude upon private matters.

78.     Defendants listened in on private matters, including conversations between David and his attorney concerning ongoing and potential litigation, and personal conversations and activities at David's Gold Coast Residence, David's Office and Highland Park Residence.

WHEREFORE, Plaintiff, David Israel, prays for the entry of a judgment against Defendants in an amount not less than $30,000, and punitive damages in the amount of $1 million; and for such other relief as this Court deems just and proper.

## COUNT VI: TRESPASS

79.     Plaintiff herein realleges all prior allegations as if fully stated herein.

- 14 -

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 14 of 47

80.     From May, 2015 and continuing through August, 2015, Defendants, without authorization of consent, entered in David's Office and installed audio recording devices therein. Defendants also installed GPS devices, without authorization, in David's vehicles, the BMW and the Jeep.

WHEREFORE, Plaintiff, David Israel, prays for the entry of a judgment against Defendants in an amount not less than $30,000, and punitive damages in the amount of $1 million; and for such other relief as this Court deems just and proper.

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 15 of 47

Respectfully submitted,

**DAVID ISRAEL**, Plaintiff

By: _____
            One of his attorneys

Ariel Weissberg, Esq.
Rakesh Khanna, Esq.
Devvrat Sinha, Esq.
Weissberg and Associates, LTD.
401 S. LaSalle St., Suite 401
Chicago, IL  60605
Tel. 312-663-0004
Fax 312-663-1514
Email: ariel@weissberglaw.com
Attorney No. 91781

## VERIFICATION

I, David Israel, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believes the same to be true.

David Israel

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 16 of 47

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 17 of 47

# EXHIBIT 1

STATE OF ILLINOIS      )
                       )  SS.
COUNTY OF C O O K      )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
    COUNTY DEPARTMENT- CRIMINAL DIVISION
            SECOND DISTRICT

THE PEOPLE OF THE          )
STATE OF ILLINOIS          )
                           )
          vs.              )  No. 17 CR 956
                           )
MICHAEL BUCON,             )
          Defendant.       )


          REPORT OF PROCEEDINGS of the hearing had

before the Honorable SHELLEY SUTKER-DERMER, on the

21st day of April, 2017, In Skokie, Illinois.


          APPEARANCES:
                HON. KIMBERLY FOXX,
                   State's Attorney of Cook County, by:
                MS. DIANN SHERIDAN,
                   Assistant State's Attorney,
                      appeared for the People;

                MR. MATTHEW HAIDUK,
                ATTORNEY-AT-LAW,
                      appeared for the Defendant.

SUSAN M. DOMINIC
Official Court Reporter
5600 Old Orchard Road, Room 204
Skokie, IL  60077

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 18 of 47

1

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 19 of 47

1      THE CLERK: Michael Bucon.

2      MS. SHERIDAN: Diann Sheridan.

3      THE COURT: All right.  Counsel, your name for

4  the record?

5      MR. HAIDUK: Matthew Haiduk.

6      MS. SHERIDAN: Assistant State's Attorney

7  Diann Sheridan.

8          Your Honor, at this time the State would

9  seek leave to amend Count 1, Count 3 and Count 4.

10     THE COURT: All right.

11     MS. SHERIDAN: With regard to Count 1, the

12  People would strike the language "with an object

13  intended to commit therein a felony, to wit: A

14  stalking." And amending the section to 5/21-3(a)1,

15  a criminal trespass to land that is a Class B

16  misdemeanor.

17          With regard to Count 2, the People would

18  amend the offense to attempt cyber stalking adding

19  the language, "which was a substantial step toward

20  the commission of a cyber stalking." Amending the

21  section to Section 8-4(a).  That is a Class A

22  Misdemeanor.

23          And with regard to Count 4, the People

24  would amend that count also to an attempt stalking

2

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 20 of 47

1  adding the language,"which was a substantial step

2  toward the commission of a stalking." Amending the

3  section to 8-4(a). Also a Class A misdemeanor.

4        In exchange for the Defendant's plea of

5  guilty to those three counts, the People would

6  recommend 18 months reporting conditional

7  discharge, no contact with the victim David

8  Israel.

9        THE COURT: Is that your agreement, counsel?

10       MR. HAIDUK: It is.

11       THE COURT: Do you have any objection to the

12  amendments?

13       MR. HAIDUK: Not all the --

14       THE COURT: Do you waive reswearing?

15       MR. HAIDUK: I will.

16       THE COURT: You are Mr. Michael Bucon?

17       THE DEFENDANT: Yes, ma'am.

18       THE COURT: How old are you, sir?

19       THE DEFENDANT: 27.

20       THE COURT: Where were you born?

21       THE DEFENDANT: Here in Chicago.

22       THE COURT: Mr. Bucon, you are now charged

23  with 3 misdemeanors. You are charged

24  with the offense of criminal trespass to property

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 21 of 47

1  or land between July 14, 2015 through August 11th,

2  2015, in that you knowingly without authority

3  entered a building, to wit: The LEARSI Group, the

4  property of David Israel, located at 3100 Dundee

5  Road, Suite 308, in Northbrook, Cook County,

6  Illinois in violation of Chapter 725, 12-3(a).

7          That is a Class B misdemeanor.  It has a

8  range in sentencing that includes probation,

9  conditional discharge -- you could go to jail up

10  to six months?

11      MS. SHERIDAN: Yes, Judge.  And just so you

12  know, it's criminal trespass to real property.  I

13  misspoke.

14      THE COURT: Real property.  Do you understand

15  that charge and the range in sentencing?

16      THE DEFENDANT: Yes, ma'am.

17      THE COURT: As to the next charge, you are

18  charged that on July 14th, 2015 and August 11,

19  2015 with attempt cyber stalking in that you

20  knowingly without lawful justification on at least

21  two separate occasions harassed another person

22  through the use of electronic communication and at

23  any time transmitted a threat of immediate or

24  future bodily harm and the threat was directed

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 22 of 47

1    toward the person, to wit: Multiple text messages

2    were sent to David Israel which was a substantial

3    step toward the commission of cyber stalking in

4    violation of 725 8-4(a); do you understand that

5    charge?

6         THE DEFENDANT: Yes, ma'am.

7         THE COURT: That's a Class A misdemeanor that

8    has a range in sentencing -- I will go over that

9    misdemeanor because the next charge is also a

10   Class A.

11        And Count 3, State, nolle pros?

12        MS. SHERIDAN: Count 3 nolle.

13        THE COURT: Counsel 4 has now been amended to

14   attempt stalking on the same date.  It indicates

15   you knowingly without lawful justification on at

16   least two separate occasions followed or placed

17   David Israeil under surveillance in that on or

18   about July 17th, 2015, that Michael Bucon

19   attempted to put a GPS device underneath the

20   victim's vehicle.

21        And that on or about July 19th, 2015

22   placed a listening device in the victim's office

23   and he transmitted threats, to wit: Michael Bucon

24   sent multiple text messages that transmitted a

5

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 23 of 47

1    threat of immediate or future bodily harm which

2    was a substantial step toward the commission of

3    stalking.  That, too, is a Class A misdemeanor.

4         So a Class A misdemeanor has a

5    sentencing range including supervision,

6    conditional discharge, probation or up to 364 days

7    in jail or you could be fined up to $25,000; do

8    you understand the possible range in sentencing?

9         THE DEFENDANT: Yep.

10        THE COURT: State, as to Count 5?

11        MS. SHERIDAN: Motion State nolle.

12        THE COURT: Nolle pros will be the order.

13   Your demand is noted on the nolle'd charges,

14   counsel.

15        MR. HAIDUK: Thank you.

16        THE COURT: There has been an offer made by

17   the State's Attorney's Office.  I do know the

18   offer because we had an issues conferences wherein

19   they informed me of the offer that was made.

20        18 months conditional discharge with no

21   contact with David Israel and you must report,

22   mandatory fees, fines and costs in the amount of

23   $309.

24        That is the offer that they made, and I

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 24 of 47

1   will go along with that offer.  So that is the

2   offer; do you wish to accept that?

3          THE DEFENDANT: Yes, ma'am.

4          THE COURT: How do you plead to the 3 counts,

5   Class B and 2 Class As?

6          THE DEFENDANT: Guilty.

7          THE COURT: By pleading guilty you are waiving

8   a number of rights.  You are waiving the right to

9   plead not guilty and require that the State's

10  Attorney's Office prove you guilty beyond a

11  reasonable doubt; do you understand that?

12         THE DEFENDANT: Yes.

13         THE COURT: You are waiving the right to have

14  your attorney cross-examine any witnesses that the

15  State would present against you; do you understand

16  that?

17         THE DEFENDANT: Yes, ma'am.

18         THE COURT: You are waiving the right to have

19  your attorney subpoena witnesses on your behalf,

20  present any motions on your behalf, present any

21  defenses on your behalf or for you to choose to

22  testify or not testify on your own behalf; do you

23  understand that?

24         THE DEFENDANT: Yes, ma'am.

7

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 25 of 47

1       THE COURT: Counsel, do I have a jury waiver?

2       MR. HAIDUK: I am sorry, Judge, I don't think

3  that you do.

4       THE COURT: I don't see one.  Let me tell you

5  what a jury is.  You are entitled to a jury

6  trial.  That would be 12 people that would sit to

7  my left, they would listen to the evidence and

8  they would decide whether or not the State has

9  proven you guilty beyond a reasonable doubt.

10  Before you could be found guilty, all of those

11  people would have to agree.

12       By pleading guilty today, if you sign

13  this jury waiver, you would be giving up the right

14  to a jury trial; do you waive that right, is it

15  your intention to waive the jury?

16       THE DEFENDANT: Yes.

17       THE COURT: Could you please sign that in open

18  court.

19       (Document executed.)

20       THE COURT: Record will reflect the Defendant

21  is signing a jury waiver in open court.

22       I should also inform you you are

23  entitled to a bench trial.  Bench trial is where

24  the judge would hear the evidence and make a

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 26 of 47

1    determination whether the State has proven you

2    guilty beyond a reasonable doubt.

3              By pleading guilty, you waive the right

4    to have any trial at all; do you understand that?

5         THE DEFENDANT: Yes, ma'am.

6         THE COURT: Are you pleading guilty of your

7    own free will?

8         THE DEFENDANT: Yes, ma'am.

9         THE COURT: Has anyone forced you or

10   threatened you in any way to make you plead

11   guilty?

12        THE DEFENDANT: No.

13        THE COURT: Has anyone promised you anything

14   other than the offer that was made in open court

15   in exchange for your plea of guilty?

16        THE DEFENDANT: No.

17        THE COURT: Are you under the influence of any

18   alcohol or drugs today?

19        THE DEFENDANT: Nope.

20        THE COURT: State, is there a factual basis?

21        MS. SHERIDAN: Yes, Judge.

22              The State would first call Detective

23   Brian Meents, Star Number 103 from the Northbrook

24   Police Department.

9

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 27 of 47

1           He would testify that starting in July

2    of 2015 throughout 2015 until the Defendant's

3    arrest in April of 2016, he was conducting an

4    investigation into the criminal activity of the

5    Defendant Michael Bucon, that during this

6    investigation Detective Meents learned that the

7    Defendant Michael Bucon was an employee of Xtreme

8    Protection Services, LLC.

9           He also learned that James Adams owned

10   and operated Xtreme Protection Services, LLC.,

11   that during the course of Mr. Michael Bucon's

12   employment, the Defendant entered into the

13   building of 3100 Dundee Road, Suite Number 308 in

14   Northbrook.  Suite Number 308 is the the LEARSI

15   Group that is the property of the victim David

16   Israel.

17          While in Suite 308, Michael Bucon placed

18   two eavesdropping devices with the purpose to gain

19   information about David Israel in an effort to

20   subsequently stalk and threaten Mr. Israel.

21          The Defendant did not have permission or

22   consent to enter that office.

23          It would also be stipulated

24   that the Defendant placed two two different GPS

10

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 28 of 47

1   devices on the victim Mr. Israel's vehicle in an

2   effort to stalk and threaten the victim.

3           Detective Meents would also testify that

4   he learned of multiple threatening text messages

5   from the Defendant to the victim David Israel

6   throughout the course of July and August 2015.

7           Specifically on or about July 15th,

8   2015, a text was sent by the Defendant to the

9   victim, quote, I am your worst nightmare.  Sounds

10  good, unquote.

11          Oh July 17th, 2015, Defendant sent a

12  text to the victim, quote, don't get too tan.  I

13  have a membership here to, unquote.

14          Furthermore, on July 21, 2015, Defendant

15  sent a text to the victim, quote, good morning.

16  Hope you now have an idea on what I have against

17  you.  I call and we can discuss or I escalate this

18  to another level.  See you at the country club.

19          On July 21st, 2015, Defendant text the

20  victim, quote, a bit too hot to be wearing that

21  shirt, don't you think, David?  Let's see where

22  you end up.  I am not too far.  Winking smiley

23  emoji.

24          On July 23, 2015, the defendant sent a

11

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 29 of 47

1    text messages to the victim, quote, we are all

2    coming for you, David, unquote.

3            On August 8th, 2015, Defendant sent a

4    text message to the victim,"what are you doing

5    walking down Rush Street in a yellow shirt?  You

6    make this too easy. You might want to check your

7    car again." Referring to the two GPS devices on

8    the Defendant's vehicle.  At that time the

9    Defendant David Israel was on Rush Street wearing

10   a yellow shirt.

11           Also on August 8th, 2015, the Defendant

12   sent a text message warning the victim to check

13   his car again.

14           Furthermore, your Honor, the People

15   would also call the victim David Israel to

16   testify.  He would, in fact, testify that he

17   received these texts, that these texts placed him

18   in reasonable apprehension of immediate and future

19   bodily harm, he felt threatened, that he, in fact,

20   called the police and that the listening devices

21   in his office as well as the two GPSes on his

22   vehicle caused him fear and distress.

23           He would further testify that he does

24   not know Michael Bucon but he did know Michael

12

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 30 of 47

1    Bucon worked for Jim Adams at Xtreme Protection

2    and Jim Adams worked for his sister Diane Israel

3    with whom he has had a very contentious and

4    lengthy litigations.

5           It would be further stipulated

6    that a warrant was issued on September 28th, 2015

7    and that the Defendant was arrested

8    on April 4th of 2016, that upon the Defendant's

9    arrest, the Defendant was advised of his rights,

10   that he admitted to placing the eavesdropping

11   devices in the victim's office, that he admitted

12   to placing the GPS devices on the victim's

13   vehicle, that he admitted to sending those texts

14   to the victim and that he admitted

15   that he was told to do all this by his boss, Jim

16   Adams, owner of Xtreme Protection Services; so

17   stipulated?

18       MR. HAIDUK: Yes.

19       MS. SHERIDAN: May the Defendant be sworn?

20       THE COURT: Could you swear the Defendant,

21   please.

22       THE CLERK: Sir, please raise your right hand.

23             (Witness sworn.)

24       THE COURT: Are those the facts to which you

13

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 31 of 47

1       are pleading guilty to?

2               THE DEFENDANT: Yes.

3               THE COURT: The Court finds there's a factual

4       basis.

5                   The Court further finds that the

6       defendant has been advised of the nature of the

7       charges, the range in sentencing, and as to each

8       and every one of his rights, he understands them,

9       he is pleading guilty knowingly and voluntarily.

10                  The plea will be accepted.  There will

11      be a finding of guilty to the Class B misdemeanor

12      of criminal trespass to real property, the Class A

13      misdemeanor attempt cyber stalking, Class A

14      misdemeanor of attempt stalking and judgment will

15      be entered on the findings.

16                  Is there anything in aggravation?

17              MS. SHERIDAN: Your Honor, we rest on our

18      agreement discussed with counsel.

19              THE COURT: Mitigation?

20              MR. HAIDUK: The same, Your Honor.

21              THE COURT: Mr. Bucon, do you wish to say

22      anything before this Court imposes sentence?

23              THE DEFENDANT: No.

24              THE COURT: Based on the agreement of the

14

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 32 of 47

1    parties, the recommendations of the parties, this

2    Court will sentence you in accordance with the

3    agreement to 18 months conditional discharge

4    reporting and no contact with the complaining

5    witness David Israel. Mandatory fees, fines and

6    costs in the amount of $309.

7              Recall and quash any warrants that may

8    have been issued as to the Defendant on this case

9    only.

10             I will enter an order pursuant to your

11   plea that you be removed from the GPS monitoring

12   as you have plead guilty to charges now and that

13   was the agreement, as I understand it. State, is

14   that correct?

15   MS. SHERIDAN: Yes, your Honor. And the

16   Defendant has been admonished there's no contact

17   with Mr. David Israel.

18   THE COURT: You understand that's a violation

19   if you have contact of any kind and certainly not

20   only is it a condition of the conditional

21   discharge, if you violate that, you could go to

22   Cook County Jail and I have told you the possible

23   ranges.

24   THE DEFENDANT: Yes.

15

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 33 of 47

1          THE COURT: Don't touch it yourself.  They

2     will remove it when it is appropriate, but I have

3     signed the order.

4               You have the right to appeal.  Before

5     you can do that, you must file a motion to vacate

6     or take back this plea or motion to reconsider the

7     sentence.  The motion must be filed within 30 days

8     of today's date.

9               That has to be in writing, it has to set

10    forth in that motion why you are asking me to

11    allow you to withdraw your plea of guilty or

12    reconsider the sentence.

13              Any reason not set forth in that motion

14    can't later be used as a grounds for appeal.

15              If you don't have funds to hire a lawyer

16    to assist you, one will be appointed at no cost to

17    you and a copy of the transcript will be provided

18    at no cost.

19              If your motion is granted, the plea,

20    judgment and sentence will be vacated and a trial

21    date would be set.

22              Any charges that have been dismissed,

23    nolle pros'ed could be reinstated and any charges

24    that were amended could be reinstated to the

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 34 of 47

```
 1    original charge; do you understand what I have

 2    said?

 3         THE DEFENDANT: Yes.

 4         THE COURT: Any questions about what I have

 5    said?

 6         THE DEFENDANT: No.

 7         THE COURT: Anything further?

 8         MR. HAIDUK: No.

 9         MS. SHERIDAN: All right.

10              (Which were all the proceedings

11               had in the above-entitled cause.)

12

13

14

15

16

17

18

19

20

21

22

23

24
```

STATE OF ILLINOIS  )
                      )   SS.
COUNTY OF C O O K  )

  IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
  MUNICIPAL DEPARTMENT-SECOND MUNICIPAL DISTRICT

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 35 of 47

                   I, SUSAN M. DOMINIC, Official Court
Reporter of the Circuit Court of Cook County,
Municipal Department-Second Municipal District, do
hereby certify that I reported in shorthand the
proceedings had on the hearing in the
aforementioned cause; that I thereafter caused the
foregoing to be transcribed into typewriting,
which I hereby certify to be a true and accurate
transcript of the Report of Proceedings had before
the Honorable SHELLEY SUTKER-DERMER, Judge of said
Court.

                                                                                  SUSAN M. DOMINIC,
                                                                        OFFICIAL COURT REPORTER
                                                                       NO. 84-3102

Sworn to on the    28th    day of
April _ _, 2017.

18

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 36 of 47

# EXHIBIT 2

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 37 of 47



# GROUP
# EXHIBIT 3

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 38 of 47



ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 39 of 47

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 40 of 47

**+1 (847) 379-1068**

far. ;)

Jul 22, 2015, 5:42 PM

Hi :)

Jul 23, 2015, 11:25 AM

Do you remember two days before I texted you left your car window open for me? That's #3 David ;)

#4 Would most likely be at home but I'd like to save that one since its the best one :)

Jul 23, 2015, 1:43 PM

We are all coming for you David

Text Message

**+1 (847) 379-1068**

save that one since its the best one :)

Jul 23, 2015, 1:43 PM

We are all coming for you David.

Just got this. I'm in a meeting until 3:15 and we'll talk then.

That's okay. I'll continue to listen.

Jul 30, 2015, 10:26 AM

We will be leaving soon to meet and discuss your future. I have the songs you wrote which then you will be the one singing.

Text Message

**+1 (847) 354-4029**

Text Message
Aug 5, 2015, 8:06 AM

hi david

we didn't want you to think we forgot about you

it's amazing the lengths you will go to parent us from hearing your conversations......unfortunately it's not working for you......

very soon we will meet face to face to discuss everything......very soon...have a great day

Aug 8, 2015, 2:35 PM

Text Message

**+1 (847) 354-4029**

Aug 8, 2015, 2:35 PM

what are you doing walking down rush st in a yellow shirt.....you make this too easy.....might want to check your car again

Aug 11, 2015, 12:14 PM

hey David hope your week is going well, wanted to give you a little more information prior to us meeting . by now you have attempted to uncover all the little ears that we have placed.....but I'm willing to bet you missed several....there was a

Text Message

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 41 of 47



●●○○○ AT&T LTE          12:27 PM          ⚡ ⚹ 75% ■■

⟨ 3          +1 (847) 354-4029          ⓘ

Aug 11, 2015, 12:14 PM

hey David hope your week is going well, wanted to give you a little more information prior to us meeting . by now you have attempted to uncover all the little ears that we have placed.....but I'm willing to bet you missed several....there was a teddy bear sent to you awhile back from a cancer center......you might want to open the bear up,a big surprise awaits.....we know everything and have been listening for quite awhile...keep that in mind,see you soon

---

uncover all the little ears that we have placed.....but I'm willing to bet you missed several....there was a teddy bear sent to you awhile back from a cancer center......you might want to open the bear up,a big surprise awaits.....we know everything and have been listening for quite awhile...keep that in mind,see you soon

Just now

Aug 13, 2015, 8:40 PM

David it is unbelievable all that you have been up to the last 12

---

●○○○ AT&T LTE          12:27 PM          ⚡ ⚹ 75% ■■

3          +1 (847) 354-4029          ⓘ

Aug 13, 2015, 8:40 PM

David it is unbelievable all that you have been up to the last 12 months....are little friend in the flower pot outside your office gave us so much....you have definitely not been behaving.....now we have to decide what options to give you when we meet...oh by the way you might want to check your apartment downtown..your conversations there were the most revealing......talk soon

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 42 of 47

# EXHIBIT 4



ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 43 of 47

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 44 of 47

# EXHIBIT 5

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 45 of 47



ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 46 of 47

# EXHIBIT 6

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 47 of 47



ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
CALENDAR: D
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| DAVID ISRAEL, | ) | Case No. No. 17-L-006026 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL BUCON, individually and | ) | Honorable Patricia O'Brien Sheahan |
| as agent of James Adams and Xtreme | ) | Room 2207 |
| Protection Services, LLC, JAMES | ) | |
| ADAMS, individually and as agent of | ) | |
| Xtreme Protection Services, LLC and | ) | |
| XTREME PROTECTION SERVICES, | ) | |
| LLC, | ) | |
| Defendants. | ) | Calendar D |

### NOTICE OF FILING

TO:     See Attached Service List

PLEASE TAKE NOTICE THAT on August 9, 2017, we caused to be filed with the Clerk of the Circuit Court of Cook County, Illinois, **AMENDED VERIFIED THIRD AMENDED COMPLAINT,** a copy of which is attached hereto and served upon you.

**DAVID ISRAEL,** Plaintiff

By:_____
    One of his attorneys

Ariel Weissberg, Esq.
Rakesh Khanna, Esq.
Devvrat Sinha, Esq.
Weissberg and Associates, Ltd.
401 S. LaSalle Street, Suite 403
Chicago, IL 60605
(312) 663-0004
Firm ID No. 91781

1

### CERTIFICATE OF SERVICE

      I, Ariel Weissberg, certify that on August 9, 2017, I caused to be served **AMENDED VERIFIED THIRD AMENDED COMPLAINT** upon the following parties by electronic transmission:

Glenn Heilizer, Esq.
Heilizer Law Offices
5 N. Wabash, Suite 1304
Chicago, IL 60602
Fax No. 312-759-9190
**By Email: glenn@heilizer.com**

James Lowry, Esq.
Law Offices of James Lowry
77 W. Washington St., Suite 1415
Chicago, Illinois 60602
**By Email:  jlowry@jlowrylegal.com**

Daniel Lynch, Esq.
Mindy S. Schwab, Esq.
Lynch Thompson LLP
150 South Wacker Drive, Suite 2600
Chicago, IL 60606
**By Email: dlynch@lynchthompson.com**
**By Email: mschwab@lynchthompson.com**

ELECTRONICALLY FILED
8/9/2017 5:37 PM
2017-L-006026
PAGE 2 of 2

_____
Ariel Weissberg