Exhibit 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| DAVID ISRAEL, ) | |
|          Plaintiff, ) | |
| v. ) | No. 16 L 9348 |
| ) | |
| MICHAEL BUCON, individually and ) | |
| as agent of James Adams and Xtreme ) | |
| Protection Services, LLC, JAMES ) | |
| ADAMS, individually and as agent of ) | |
| Xtreme Protection Services, LLC and ) | |
| XTREME PROTECTION SERVICES, ) | |
| LLC, ) | |
|          Defendants. ) | |

**PLAINTIFF'S ANSWERS TO DEFENDANTS JAMES ADAMS' AND**
**XTREME PROTECTION SERVICES, LLC'S FIRST SET OF INTERROGATORIES**

Plaintiff, David Israel, by and through his attorneys, Weissberg and Associates, Ltd., and as his Answer to Defendants James Adams and Xtreme Protection Services, LLCs Interrogatories, states as follows:

1. Identify the person signing these interrogatories and identify all persons, by name, address, telephone number, and email, who furnished information for these answers.

**ANSWER:** **David Israel ("David"), 3100 Dundee, Suite 308, Northbrook, IL 60062, 847-274-1535, disrael@learsico.com.**

2. Identify, by name, institution, address, phone number, and email, all counselors, therapists, doctors, physicians, or other medical professionals with whom plaintiff consulted, sought treatment, received therapy or from whom plaintiff received prescription medications, from January 1, 2001 to the present.

**ANSWER:** **David objects to the interrogatory as it seeks personal medical records that are confidential and subject to the physician-patient privilege.**

1

**David further objects to this Interrogatory as overbroad and unduly burdensome, on the grounds that it seeks information that is irrelevant to the issues for which these interrogatories were permitted and seeks information not reasonably calculated to lead to the discovery of admissible information.**

3. Identify, by name, institution, address, phone number, and email, all counselors, therapists, doctors, physicians, or other medical professionals with whom plaintiff consulted, sought treatment, received therapy or from whom plaintiff received prescription medications, in connection with any matter alleged in the second amended complaint.

**ANSWER:** **David has not consulted, sought treatment, received therapy or prescription medications from any counselors, therapists, doctors, physicians, or other medical professionals in connection with any matter alleged in the second amended complaint.**

4. Identify specifically all dates on which plaintiff had any communications with any law enforcement officer regarding any matter alleged in the second amended complaint. For each date, identify the officer contacted by name and jurisdiction, state who initiated the contact, and describe the substance of the communication.

**ANSWER:**

| Date | Officer(s) | Jurisdiction | Initiation | Substance |
|---|---|---|---|---|
| 4-23-2014 | Strickland | Northbrook Police Dept. ("NBPD") | David | David finds a bug in Learsi Offices in Northbrook. |
| 7-17-2015 | Johnson | NBPD | David | David receives texts from anonymous number and finds GPS trackers on his BMW and Jeep. |
| 7-19-2015 | Johnson Pozniak Peterson | NBPD | David | David and Harey seek assistance in sweeping for bugs at Learsi Offices. |
| 7-20-2015 | O'Malley Meents | NBPD | David | David finds a bug in his planter. |
| 7-23-2015 | Meents | NBPD | David | David receives more texts. |

| 8-3-2015 | Meents | NBPD | David | David receives more texts and finds a bug in a teddy bear in his office. |
|---|---|---|---|---|
| 8-5-2015 | Meents | NBPD | David | Michael Ettinger receives an anonymous text. |
| 8-10-2015 | Meents | NBPD | Ettinger | Ettinger discloses identifying information for the number that texted him. |
| 8-11-2015 | Meents | NBPD | David | David receives more texts. |
| 8-19-2015 | Meents/ Young | NBPD/ FBI | Meents | Officer Meents informs David of the possible assistance of the FBI. |
| 9-8-2015 | Meents Schultz | NBPD | NBPD | Police identify Bucon as the stalker. Bucon informs that his actions were done as an employee for Adams. |
| 9-22-2015 | Meents | NBPD | NBPD | Officer Meents gives David a status update and seeks the work address of Adams. |
| 11-9-2015 | Popkov Sheehan | Glenview Police Dept. ("GPD") | Harey | David and Harey Israel discussed possible action against Diane Israel, Michael Bucon, and James Adams for stalking and harassment. |
| 11-11-2015 | Unknown | GPD | GPD | Harey brings Ronen Moyal ("Ronen") and his associate, Lucy, who speak with GPD. |
| 11-13-2015 | Ward | Orland Park Police Dept. (OPPD) | Harey | Harey speaks with OPPD to inform them of the warrant on Bucon. |
| 3-6-2016 | Meents | NBPD | NBPD | Officer Meents informs David that Bucon has fled the country. |

5. Identify specifically all dates on which plaintiff had any communications with any state or federal prosecutor regarding any matter alleged in the second amended complaint, other than in-court communications. For each date, identify the prosecutor contacted by name and jurisdiction, state who initiated the contact, and describe the substance of the communication.

**ANSWER:**

| Date | Prosecutor(s) | Jurisdiction | Initiation | Substance |
|---|---|---|---|---|
| 9-22-2015 | Dall | Cook | Dall | Dall interviews David about the case and reviews the files. |
| 9-25-2015 | Coelho | Cook | Meents | Officer Meents schedules a conference call so Officer Coelho can interview Ronen about the investigation and the discovery of the devices. |

3

6. Identify all persons, by name, address phone number and email, who have knowledge of any fact alleged in the second amended complaint, and describe the source of their knowledge.

**ANSWER[1]:   See attached spreadsheet. Investigation continues.**

7. Identify all persons with whom plaintiff shared the alleged contents of any texts as set forth in the second amended complaint.

**ANSWER:   Ariel Weissberg, Devvrat Sinha, Rochelle Laxamana, Hava Weissberg, Sarah Biswurm, James Dahl, Peter M. Brady, Michael Ettinger, James Adams, Glenn Heilizer, Michael Bucon, Jim Lowry, Mindy Schwab, Avidan Joel Stern, Asia Adams, Diann Sheridan, Matthew Haiduk, Almas Hussein, Lillian Johnson, Ronen Moyal, David Rahimzadeh, Lucy, Harey Israel, Alan Israel, Gary Katler, DJ Hoffman, Emily Hoffman, Ivy Israel, Jamie Israel, Michael Israel, Patricia Israel, Samantha Israel, Michael Ettinger, David Weiss, Officer Jason Coelho, Officer Taylor Dahl, Officer Brian Meents, Officer Johnson, Officer Fainman, Officer Kopera, Officer O'Malley, Officer Peterson, Officer Pozniak, Officer Kevin Schultz, Officer Strickland, Officer Popkov, Officer Sheehan, Max Morales.**

**A .pdf document containing most of these texts has been filed as an Exhibit to the Third Amended Complaint, which is a public document.**

8. Identify all phone numbers to which any of the alleged texts as set forth in the second amended complaint were sent, and for each number, identify the owner of the number and name of the company providing phone and data service.

---

[1] Sarah Biswurm, Rakesh Khanna, Rochelle Laxamana, Hava Weissberg, Devvrat Sinha and Ariel Weissberg are employees of Weissberg and Associates, Ltd. and will not be called as witnesses.  Peter Brady, James Dahl and Robert Fisher are also attorneys and will not be called to testify

4

**ANSWER:** **(847) 274-1535. David Israel. Investigation continues as to name of the company providing phone and data service.**

9. Identify all actions undertaken by plaintiff to protect himself following the alleged receipt of texts as set forth in the second amended complaint, and for each such action, identify the date such action was taken, identify any other persons involved, by name, address, phone number and email, and identify the costs of taking such action.

**ANSWER:**

| Date | Action | Person(s) involved | Costs |
|---|---|---|---|
| **April, 2014** | **David hires Gladio Group as a private investigator** | **David, Ronen** | |
| **4-23-2014** | **Ronen finds a bug in Learsi Offices in Northbrook and David contacts the NBPD.** | **David, Harey, Ronen, Jeremias, Houston, Jr., Officer Strickland** | |
| **7-17-2015** | **David receives texts from anonymous number, Ronen finds a GPS tracker on David's BMW and Alan finds a GPS tracker on David's Jeep; David contacts NBPD.** | **David, Harey, Alan, Ronen, Rahimzadeh, Officer Johnson** | |
| **7-19-2015** | **David and Harey sweep Learsi Offices and David's residence for bugs, with the assistance of NBPD.** | **David, Harey, Officers Johnson, Pozniak and Peterson** | **None** |
| **7-20-2015** | **Ronen finds the bug at Learsi Offices. David calls NBPD.** | **David, Harey, Ronen, Rahimzadeh, Officers Meents and O'Malley** | |
| **July 2015** | **Despite paying for his golf club membership, David no longer feels safe attending and begins attending less frequently.** | **David** | |
| **August 2015** | **David and Harey consult with David's brother-in-law, Gary Katler and Gladio Group and decide to sign up for defense classes and tactical training with Chris Peters in Rosement.** | **David, Harey, Gary Katler, Ronen, Chris Peters** | |
| **August 2015** | **David and Harey apply for a concealed carry license.** | **David, Harey** | |
| **August 2015** | **David and Harey sign up for shooting range sessions on a monthly basis.** | **David, Harey** | |
| **August 2015** | **David and Harey purchase knives for self-defense.** | **David, Harey** | |
| **August 2015** | **David and Harey purchase guns and ammunition for self-defense.** | **David, Harey** | |

5

| | | | |
|---|---|---|---|
| 8-3-2015 | Ronen finds a bug in Learsi Offices. David calls NBPD. | David, Harey, Ronen, Rahimzadeh, Officer Meents | |
| 8-5-2015 | Ettinger receives a suspicious message. David calls NBPD. | David, Ettinger, PI James Miller, Officer Meents | |
| August 2015 | Harey purchases new phones for David and himself. | Harey, David | |
| August 2015 | David purchases a bell to ring on his office door. | David | |
| August 2015 | David purchases and installs a security system at his office. | David | |
| August 2015 | David purchases new locks for his office. | David, locksmith | |
| August 2015 | David consults the building maintenance to see about changing the locks on the building. | David, building maintenance | None |
| August 2015 | David has Gladio Group perform regular security sweeps | David, Ronen | |
| 8-11-2015 | David continues to receive suspicious texts and reports to NBPD | David, Officer Meents | None |
| 8-19-2015 | David calls NBPD to discuss possible cooperative efforts with the FBI. | David, Officers Meents and Young | None |
| 9-8-2015 | Upon the identification of Bucon as his stalker, David informs NBPD he will sign complaints against Bucon. | David, Harey, Officers Meents and Schultz | None |
| 9-22-2015 | David meets with ASA Taylor Dall to discuss the case. | David, ASA Dall, Officer Meents | None |
| 9-22-2015 | David discusses possible locations of James Adams' office. | David, Officer Meents | None |
| 11-9-2015 | David goes to GPD to discuss possible action against Diane, Bucon and Adams. | David, Harey, Officers Popkov and Sheehan | None |

For address, telephone, and e-mail of each person involved, please see the Answer to Interrogatory No. 6. Investigation continues, including as to the costs of taking such action.

10. Identify all vehicles in or on which GPS devices were located, as alleged in the second amended complaint. For each such vehicle, provide the make, model, license number, and identify the owner.

**ANSWER:**

| Make | Model | License | Owner |
|---|---|---|---|
| BMW | M6 | Learsi | David Israel |
| Jeep | Grand Cherokee | Learsi | David Israel |

6

11. Identify all dates on which any GPS device was located by plaintiff or by plaintiff's agent, as alleged in the second amended complaint, and identify the person discovering those alleged devices, by name, address, phone number and email.

**ANSWER:** **There was a GPS device found on the BMW by Ronen Moyal and David Rahimzadeh on July 17, 2015, and on the Jeep in Dubuque, Iowa on July 17, 2015 by Alan Israel.**

12. Identify all dates on which any eavesdropping device was located by plaintiff or by plaintiff's agent, as alleged in the second amended complaint, and identify the person discovering those alleged devices, by name, address, phone number and email.

**ANSWER:** **The first eavesdropping device was found on April 23, 2014 by Ronen Moyal and David Rahimzadeh.**

**The second eavesdropping device was found on July 20, 2015 by Ronen Moyal and David Rahimzadeh.**

**The third eavesdropping device was found on August 3, 2015 by Ronen Moyal and David Rahimzadeh.**

13. Identify the location where any eavesdropping device was located by plaintiff or by plaintiff's agent, as alleged in the second amended complaint, and for each such alleged device, identify the building address, suite number if applicable, and exact location where each alleged item was found.

**ANSWER:** **The first eavesdropping device mentioned in the Answer to Interrogatory 12 was found underneath David's desk at his offices located at 3000 Dundee Road, Suite 308, Northbrook, Cook County, Illinois**

7

**The second eavesdropping device mentioned in the Answer to Interrogatory 12 was found in a planter just outside David's inner office, located at 3000 Dundee Road, Suite 308, Northbrook, Cook County, Illinois.**

**The third eavesdropping device mentioned in the Answer to Interrogatory 12 was found in a pink plush bear at on the credenza in David's office near the television, located at 3000 Dundee Road, Suite 308, Northbrook, Cook County, Illinois.**

14. Itemize specifically all damages, compensatory, punitive, or otherwise, sought by plaintiff in this lawsuit.

**ANSWER:** **David objects to this Interrogatory as overbroad, unduly burdensome, on the grounds that it seeks information that is irrelevant to the issues for which these interrogatories were permitted and seeks information not reasonably calculated to lead to the discovery of admissible information.**

**Notwithstanding the investigation, David answers as follows:**

**Damages**
- **Gladio Group's private investigation services for himself and his children**
- **Defense Classes**
- **Tactical Classes with Chris Peters**
- **Concealed Carry License Application**
- **Concealed Carry License**
- **Monthly Gun Range Outings**
- **Regular security sweeps**
- **Knives**
- **Guns**
- **Ammunition**
- **New cell phones**
- **Bell for Office Door**
- **New Locks for Office**
- **Office Security System**
- **Golf Club Membership**

**Plaintiff is also seeking punitive damages. Investigation continues, including as to the costs of damages.**

15. Describe specifically all symptoms, medical conditions, and emotional states of plaintiff due to the alleged circumstances set forth in the second amended complaint, including but not limited to all forms of "mental anguish and distress" claimed to be suffered by plaintiff.

**ANSWER: Without being limited in any fashion, the following represents some of the mental anguish and distress suffered by David:**

**David has lived in a state on constant paranoia with each sudden or out of place noise representing a possible attack by an intruder or the Defendants. With the Defendants stalking him by the covert and clandestine installation of GPS devises, David knew that he was up against professionals who are trained in espionage and reconnaissance and had an upper-hand him. He knew that the Defendants had complete knowledge that David had gone to the police, but despite the involvement of law enforcement, their constant surveilling and sending of threatening text messages instilled panic and fear in David.**

**David knew he had to find a way to defend himself. Having gone without a gun his whole life, and having living an ordinary civilian life, David, a grandfather, had to go out and buy a gun and apply for a concealed carry license. He had to take physically demanding self-defense classes to prepare himself to be able to fight back and defend himself against professionals in the event that he was attacked. He learned from those self-defense classes and from talking to the police about how exposed he was to danger and to attack. He felt vulnerable being in public and avoided going outside. He did not feel safe inside his Highland Park Residence or the Gold Coast Condominium because he felt those had eavesdropping devises within them or that the Defendants had access to them. He experienced fear and the exhaustion from constantly being on the look-out for threats to his safety that drove him to**

9

these measures. The Defendants are responsible for these effects, driving David to being obsessed about safety precautions.

David lives his life differently; he is unwilling, fearful and cautious to go outside. He worries that his presence around friends and family will endanger them. Further, some friends and family no longer feel safe in his presence, exacerbating his sense of loneliness. David goes to the country club less and always makes sure he has someone with him.

David has changed his routine, regularly calling Harey to update him of his schedule every day, and exchanging calls with his children multiples times a day. As a widower with three daughters who were very strongly affected by their mother's death, David frequently worries about his children even more in light of the threats made to him. David has sleepless nights as a result of this newfound anxiety.

David has become guarded and feels unsafe. He has enrolled in different defense and tactical classes and purchased weapons that he carries on his person and in his vehicle. He has purchased new locks, a security system, and an entrance bell for his office alerting David and his employees of people entering and exiting his office. David hired Gladio Group as a private investigator. He is constantly on alert as a result of the actions of the case and regularly sweeps his office and residences for bugs.

16. Identify all business and other financial losses allegedly suffered by plaintiff due to the alleged circumstances set forth in the second amended complaint.

**ANSWER:** **Investigation continues.**

17. Identify all lifestyle changes by plaintiff due to the alleged circumstances set forth in the second amended complaint.

**ANSWER:** **In response to this request, see the Answer to Interrogatory No. 15.**

18. Identify each lay witness as defined in Illinois Supreme Court Rule 213(f)(1), each independent expert witness as defined in Illinois Supreme Court Rule 213(f)(2) and each controlled expert witness as defined in Illinois Supreme Court Rule 213(f)(3) whom Defendant has employed or retained to testify at any hearing or trial of this case and (i) state each subject on which that witness will testify; (ii) state each opinion that you expect to elicit from that witness and the basis; (iii) state the qualifications of that witness; and (iv) identify each report prepared by that witness for this case.

**ANSWER:**

**1. David Israel will testify as to the discovery of the eavesdropping devices, his interactions with Michael Bucon; the steps he took to protect himself from being surveilled; and the state of his health during and after the surveillance.**

**2. Michael Bucon will be called to testify with respect to his role in surveilling David Israel; his relationship with James Adams and Xtreme Protection Services, LLC, including but not limited to any correspondence or payments made related to the surveillance of David Israel; his relationship with Diane Israel including, but not limited to any correspondence or payments made related to the surveillance of David Israel; and the relationship between Diane Israel, James Adams and Xtreme Protection Services, LLC.**

**3. James Adams will be called to testify with respect to his role in the surveillance of David Israel; his relationship with Michael Bucon, both individually and as an agent of Xtreme Protection Services, LLC, including but not limited to any correspondence or payments made related to the surveillance of David Israel and other possible family members; his relationship with Diane Israel, both individually and as an agent of Xtreme Protection Services, LLC including but not limited to any correspondence or payments made**

11

related to the surveillance of David Israel; and the relationship between Diane Israel, James Adams and Xtreme Protection Services, LLC.

4. **Harey Israel** will be called to testify with respect to the discovery of the GPS trackers and eavesdropping devices, David's interactions with Michael Bucon; the steps David took to protect himself from being surveilled; and the state of David's health during and after the surveillance.

5. **Alan Israel** will be called to testify with respect to the discovery of the GPS trackers and eavesdropping devices, particularly the discovery of the GPS tracker on the Jeep Grand Cherokee; David's interactions with Michael Bucon; the steps David took to protect himself from being surveilled; and the state of David's health during and after the surveillance.

6. **Michael Ettinger** will be called to testify with respect to the discovery of the eavesdropping devices, David's interactions with Michael Bucon; the steps David took to protect himself from being surveilled; and the state of David's health during and after the surveillance.

7. **Officer Meents from the NBPD** will be called to testify with respect to his investigation of the case. Other officers or detectives from the NBPD who assisted Officer Meents in the investigation, and as disclosed in the NBPD police report, may also be called.

8. **Almas Hussein** will be called to testify with respect to her correspondence with David regarding the surveillance on David and the Illinois Department of Regulation prosecution case against James Adams.

9.      **Lillian Johnson** will be called to testify with respect to her correspondence with David regarding the surveillance on David and the Illinois Department of Regulation prosecution case against James Adams.

10.     **Ronan Moyal** will be called to testify with respect to his relationship with David Israel, Diane Israel, James Allen, Michael Houston, Jr. and David Rahimzadeh; the conversations he had with David Israel, Diane Israel, James Allen, Michael Houston, Jr. and David Rahimzadeh regarding the surveillance of David Israel; the discovery of the GPS trackers and eavesdropping devices, particularly the discovery of the GPS tracker on the BMW and all of the eavesdropping devices; his observations and suggestions in relation to his role as a private investigator for David Israel; David's interactions with Michael Bucon; the steps David took to protect himself from being surveilled; and the state of David's health during and after the surveillance.

11.     **David Rahimzadeh** will be called to testify with respect to his relationship with David Israel, Diane Israel, James Allen, Michael Houston, Jr. and Ronan Moyal; the conversations he had with David Israel, Diane Israel, James Allen, Michael Houston, Jr. and Ronan Moyal regarding the surveillance of David Israel; the discovery of the GPS trackers and eavesdropping devices, particularly the discovery of the GPS tracker on the BMW and all of the eavesdropping devices; his observations and suggestions in relation to his role as a private investigator for David Israel; David's interactions with Michael Bucon; the steps David took to protect himself from being surveilled; and the state of David's health during and after the surveillance.

12.     **Michael Houston, Jr.** will be called to testify with respect to his relationship with David Israel, Diane Israel, James Allen, Ronan Moyal and David Rahimzadeh and the

13

conversations he had with David Israel, Diane Israel, James Allen, Ronan Moyal and David Rahimzadeh regarding the surveillance of David Israel; the discovery of the GPS trackers and eavesdropping devices.

13. Max Morales will be called to testify with respect to his interactions with bodyguards hired by Diane after he was employed by the Israel family businesses.

14. John Wilson will be called to testify with respect to his role in the surveillance of David Israel; his relationship with James Adams and Xtreme Protection Services, LLC, including, but not limited to any correspondence or payments made related to the surveillance of David Israel; his employment as a bodyguard for Diane, including, but not limited to any correspondence or payments made related to the surveillance of David Israel

15. Diane Israel will be called to testify with respect to her role in the surveillance of David Israel; her relationship with Michael Bucon, including but not limited to any correspondence or payments made related to the surveillance of David Israel; her relationship with James Adams and Xtreme Protection Services, LLC, including, but not limited to any correspondence or payments made related to the surveillance of David Israel; and the relationship between Diane Israel, James Adams and Xtreme Protection Services, LLC.

16. See Response to Interrogatory No. 5 for a list of all potential witnesses.

Plaintiff reserves the right to supplement his response to interrogatories issued by any of the defendants. Investigation continues.

                **DAVID ISRAEL,** Plaintiff

                By: _____
                        One of his attorneys

Ariel Weissberg, Esq.
Devvrat Sinha, Esq.
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, Illinois 60605
T. 312-663-0004
F. 312-663-1514
Attorney No. 91718

**CERTIFICATE OF SERVICE**

      I, Ariel Weissberg, certify that on August 21, 2017, I caused to be served **PLAINTIFF'S ANSWERS TO DEFENDANTS JAMES ADAMS' AND XTREME PROTECTION SERVICES, LLC'S FIRST SET OF INTERROGATORIES** upon the following parties by the method so noted below:

>James Lowry, Esq.
>Law Offices of James Lowry
>77 W. Washington St., Suite 1415
>Chicago, Illinois 60602
>**By Email: jlowry@jlowrylegal.com**
>
>Glenn E. Heilizer, Esq.
>Heilizer Law Offices
>5 N. Wabash Ave., Suite 1304
>Chicago, Illinois 60602
>**By Email: glenn@heilizer.com**

_____
Ariel Weissberg