**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID ISRAEL, | ) | Case No. 17-cv-06452 |
|     Plaintiff, | ) | Consolidated with Case No. 17-cv-06643 |
| | ) | |
|     v. | ) | Honorable Charles R. Norgle, Sr. |
| | ) | Room 2341 |
| MICHAEL BUCON, individually and | ) | |
| as agent of James Adams and Xtreme | ) | |
| Protection Services, LLC, JAMES | ) | Magistrate Judge Maria Valdez |
| ADAMS, individually and as agent of | ) | Room 1041 |
| Xtreme Protection Services, LLC and | ) | |
| XTREME PROTECTION SERVICES, | ) | |
| LLC, | ) | |
|     Defendants. | ) | |
| DAVID ISRAEL, | ) | |
|     Plaintiff, | ) | |
|     v. | ) | |
| | ) | |
| DIANE ISRAEL, and | ) | |
| SHAWN ENGBRECHT, | ) | |
|     Defendants. | ) | |

**DAVID ISRAEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**DAVID ISRAEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES Plaintiff, David Israel ("David"), by his attorneys, Ariel Weissberg and the law offices of Weissberg and Associates, Ltd., and as *David Israel's Memorandum of Law in Support of David Israel's Motion for Partial Summary Judgment,* states as follows:

**I. INTRODUCTION**

1. David adopts the facts stated in *David Israel's Statement of Material Facts in Support of David Israel's Motion for Summary Judgment* ("Statement of Facts") and *David Israel's Motion for Partial Summary Judgment* ("Motion for Summary Judgment") as if fully stated herein.

A.     **Background**

2.     This case arises from events occurring in 2014 and 2015 related to the surveillance of David and Harey Israel.

3.     In his Fifth Amended Complaint, David sued the defendants for (i) trespassing and illicitly placing listening devices in his office; (ii) intercepting his telephone conversations and eavesdropping on telephone and in-person communications with several of his attorneys (regarding, but not limited to, an inheritance of more than $20 million) in David's office; (iii) attaching SIM card enabled GPS tracking devices on his cars that transmitted their location when the associated number received a text; (iv) sending harassing and threatening text messages to him in the summer of 2015; (v) engaging in a conspiracy to obtain David's private information, including sending a teddy bear from a cancer society with a listening device stitched into the teddy bear to obtain such information and to harass and intimidate David; and (vi) intentionally inflicting emotional distress upon David.  David seeks compensatory and punitive damages in this action.

4.     Defendants, Diane and Adams, have pleaded the Fifth Amendment privilege with respect to substantially all discovery matters in this case and in their answers to the Fifth Amended Complaint.  Xtreme adopted the Adams' assertion of the Fifth Amendment for the same paragraphs in the Fifth Amended Complaint.  Defendant, Michael Bucon ("Bucon"), has already been indicted and sentenced with respect to the very matters that are part of Plaintiff's complaint.

B.     **Diane's Motion to Limit Discovery**

5.     On May 4, 2018, Diane filed *Diane Israel's Motion for Protective Order limiting Discovery on Liability Issues* (Dkt. No. 187) ("Diane Motion to Limit").  In the Diane Motion to Limit, Diane requested that the Magistrate Judge enter an order limiting discovery on liability

issues. In support of the Diane Motion to Limit, Diane appended a copy of her proposed answer to the most recent version of the complaint at that time wherein Diane responded to 'virtually all of the operative factual allegations with the following response: "Based upon the assertion of her rights under the Fifth Amendment to the United States Constitution, Diane neither admits nor denies the allegations of paragraph __.'" Diane Motion to Limit, p.2. As a result, Diane argued, her responses were the equivalent of "an unqualified admission" pursuant to Fed. R. Civ. P. 8(d) and *Ayat v. Societe Air France*, 2008 WL 114936 (N.D.Cal. Jan 8, 2008) ("*Ayat*"). *Id.*, p. 2-3. Thus, because Diane's proposed answers to the complaint were deemed admitted, Diane argued the Diane Motion to Limit should be granted. *Id.*, p. 2.

6. On May 21, 2018, David filed *Plaintiff's Response to Defendant, Diane Israel's Motion for Protective Order Limiting Discovery on Liability Issues (Dkt. No. 187)* (Dkt. No. 223) ("David Response to Diane"). In the David Response to Diane, David requested that the Magistrate Judge deny the Diane Motion to Limit. In the David Response to Diane, David argued that the Diane Motion to Limit was prematurely filed since Diane had not yet actually filed an answer. David Response to Diane, p. 2. David further argued that given her refusal to admit or deny, Diane's proposed answer was not actually an answer at all, citing to *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995) ("*LaSalle*"). *Id.*, p. 4. Under *LaSalle*, David argued that deeming Diane's proposed answer as an "inference of guilt" was forbidden, and thus, David needed to conduct discovery as to liability in order to paint a full picture of liability. *Id*.

7. On May 23, 2018, Diane filed *Diane Israel's Reply in Suport of her Motion for Protective Order Limiting Discovery on Liability Issues (Dkt. 187)* (Dkt. 230) ("Diane Reply"). In the Diane Reply, Diane reiterated her commitment to filing an answer substantially pleading the Fifth Amendment and argued that should the Court find that the answer she does file

substantially different than what she presented, the Court could use its discretionary powers to deal with her effectively. Diane Reply, p. 2. Furthermore, Diane asserted that Fed. R. Civ. P. "8(b)(6) plainly provides that Diane's assertions of the Fifth Amendment would be deemed admissions." *Id*. Consequently, Diane argued, the Magistrate Judge should grant the Diane Motion to Limit.

8. On May 30, 2018, Magistrate Judge Valdez entered an order on, among other things, Diane's Motion to Limit (Dkt. 243) ("Magistrate Order"). The Magistrate Order called Diane's answer a "gift of a liability admission," and claimed that "asserting the privilege in an answer, and thus failing to deny an allegation is the functional equivalent of an admission." Magistrate Order, p. 17-18.

9. On June 13, 2018, Plaintiff filed *Plaintiff, David Israel's Objections to the Magistrate's Order Issued on May 30, 2018 (DE 243) pursuant to Civil Procedure Rule 72(a)* (Dkt. 280) ("David Objection"). In the David Objection, among other things, David requested that the District Court Judge modify or set aside the Magistrate Order for being clearly erroneous. David cited to *National Acceptance Company of America v. Bathalter* 705 F.2d 924 (7th Cir. 1983) ("*Nat'l Acceptance*") and *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) ("*Baxter*") to support his argument in the David Objection. Under *Nat'l Acceptance* and *Baxter*, David argued. "a plaintiff may not rest a judgment on a defendant's constitutionally protected silence alone" and that "a valid claim of privilege in response to the allegations of a complaint must not be treated as an admission of those allegations." David Objection, p. 6. David argued that the Magistrate Judge took Diane's proposed answer as *proof* that David established liability and then restricted his discovery as to liability, which was clearly erroneous and contrary to the holdings of *Natl'l Acceptance* and *Baxter*. *Id*.

10. On September 20, 2018, the District Court entered an order declining to modify or set aside any portion of the Magistrate Order (Dkt. No. 471).

**C.     Adams' Motion to Limit Discovery**

11. On August 20, 2018, Adams filed *Defendant James Adams's Motion to Detremine that Certain of the Court's Rulings Apply Equally to Him and Unopposed Motion to Amend the Court's Order Regarding his Disposition* (Dkt. 395) ("Adams Motion to Limit"). In the Adams Motion to Limit, Adams noted that the Court granted, among other things, the Diane Motion to Limit. Adams Motion to Limit, ¶3. Given the Court's ruling and that "Adams is identically situated to Diane," Adams requested that the Court apply the rulings on the Diane Motion to Limit to Adams as well. *Id*., ¶¶11-12. Adams argued that the Court's reasoning in granting the Diane Motion to Limit would "apply to Adams in exactly the same way it applies to Diane" and Plaintiff had not "provided a principled—let alone persuasive—explanation why the orders do not apply to Adams" in support of its request. *Id*., ¶12.

12. On August 23, 2018, the Court denied the Adams Motion to Limit (Dkt. 400) ("Adams Initial Order"). The Court stated that it could not "summarily conclude that Adams should enjoy the benefits of the Court's ruling without the need for further argument," providing as an example that Diane asserted that "she would functionally admit nearly all of Plaintiff's allegations related to liability," but that "the record contains no such affirmative statement from Adams." Adams Initial Order, p. 5.

13. On September 7, 2018, Adams filed *Defendant James Adams's Renewed Motion – After Having Answered the Complaint and Indicated Areas of No Contest – to Limit Discovery About Liability* (Dkt. 436) ("Adams Renewed Motion"). In the Adams Renewed Motion, Adams renewed the Adams Motion to Limit on the basis that Adams filed *Defendants James Adams and*

*Xtreme Protection Services, LLC Answer to Plaintiff David Israel's Fifth Amended Complaint* (Dkt. No. 415) ("Adams Answer") on August 30, 2018. Adams Renewed Motion, ¶1. Because the Adams Answer demonstrated that Adams "functionally admitted liability on the record," Adams argued that the Court should similarly find in favor of Adams as it did for Diane in the Magistrate Order. *Id.*, ¶6. Like the Diane Motion to Limit, the Adams Renewed Motion cited to Rule 8(d) and *Ayat*. *Id.*, ¶¶8-9. Furthermore, Adams argued that "David created a window of time for the Court to consider the merits" of the Adams Renewed Motion. *Id.*, ¶1.

14. On September 19, 2018, David filed *Plaintiff's Response to James Adams Renewed Motion to Limit Discovery About Liability* (Dkt. 464) ("David Response to Adams"). In the David Response to Adams, David argued that the Adams Renewed Motion should be denied for being (a) untimely; and (b) on the merits. Relating to timeliness, David argued that although the Magistrate Order was entered on May 30, 2018, four months later, Adams failed to join the motions. David Response to Adams, p. 2. Furthermore, David stated that any "window of time" purportedly created by David, was closed by the Magistrate Judge in the Adams Initial Order, where the Magistrate Judge stated that "the parties may come to whatever private agreement they wish, the Court will not give that agreement a judicial imprimatur." *Id*. Like his arguments in the David Response to Diane and the David Objection, David argued that the Adams Renewed Motion should be denied on the merits, pursuant to *LaSalle* and *Nat'l Acceptance*, which prohibit treating the assertion of the Fifth Amendment as an admission. *Id.*, p. 2-5.

15. On September 21, 2018, Adams filed *Defendant James Adams's Reply in Support of His Renewed Motion to Limit Discovery About Liability* (Dkt. 470) ("Adams Reply"). In the Adams Reply, Adams argued that his motion was not untimely because he filed the Adams Response and that there was no supporting statute, rule or case in support of David's conclusion

about timeliness. Adams Reply, p. 2. Secondly, Adams argued that David misunderstood *LaSalle*, *Nat'l Acceptance* and *Baxter*, and that the trio of cases held that "silence *in and of itself*" was insufficient to support liability. *Id*., p. 4. In the Adams Answer, Adams stated he invoked the Fifth Amendment and affirmatively stated he would not contest any fights. *Id*. Thus, Adams argued, he was inviting the application of Rule 8. *Id*.

16. On October 4, 2018, the Magistrate Judge entered an order granting Adams Renewed Motion (Dkt. 475) ("Adams Second Order").

**D.  Answers to the Fifth Amended Complaint**

17. On August 29, 2018, Diane filed *Diane Israel's Answer to Plaintiff David Israel's Fifth Amended Complaint* (Dkt. No. 412) ("Diane Answer"). In the Diane Answer, Diane states, "Based upon the assertion of her rights under the Fifth Amendment to the United States Constitution, Diane neither admits nor denies the allegations of paragraph __" for the following paragraphs of the Fifth Amended Complaint: 15-23[1]; 25-35[2]; 42-44, 45-48, 56 and 69-70[3]; 75[4];

---

[1] These allegations related to the 2015 eavesdropping and stalking of Harey and David
[2] These allegations relate to the 2015 eavesdropping and stalking of David by Bucon, at Diane's direction
[3] These allegations relate to Diane, Adams, Bucon and Engbrecht interception David's private conversations
[4] These allegations relate to Bucon's phone records showing his constant communication with Adams and Engbrecht from April 2015 to September 2015

82-83[5], 84-87[6]; 88[7]; 92-93[8]; 95[9]; 96-97[10]; 102-106[11]; 107-109[12]; 113-116[13]; 118-120[14]; and 122-124[15].

18. In the Adams Answer, Adams states "Adams declines to answer the allegations of paragraph __ based on the assertion of his rights under the Fifth Amendment to the United States Constitution. Without waiving his assertion of the Fifth Amendment, however, Adams will not contest the allegations of paragraph __" for the substantially the entire following paragraphs of the Fifth Amended Complaint: 15-23 and 25-35[16]; 42-48 and 56[17]; 62-65[18]; 69-70 and 75[19]; 81-88, 92-93, 95-97, 102-109, 113-116, 118-120 and 122-124.[20]

---

[5] These allegations relate to Bucon acting as Adams and Xtreme's agent and Diane directing Adams, Bucon and Engbrecht to stalk David and install listening devices for Count I: Eavesdropping in violation of 740 ILCS 5/14-2.

[6] These allegations relate to Engbrecht, Adams, Bucon and Diane listening to conversations in David's office without David's consent for Count I.

[7] These allegations relate to Diane's use information to gain a litigation advantage and to threaten and harass David for Count I.

[8] These allegations relate to Diane's retention of Adams, Bucon, Engbrecht, Luke Sloan and others ("Diane's Bodyguards") to stalk, harass and intimidate David, constituting extreme and outrageous behavior for Count II: Intentional Infliction of Emotional Distress.

[9] These allegations relate Diane directing the stalking, harassing and intimidation of David for Count II.

[10] These allegations state that Diane and Diane's Bodyguards intended and knew that extreme distress would result from their actions and that a reasonable person should not fear his oral communications are being intercepted.

[11] These allegations relate to Bucon, Diane, Adams and Engbrecht's intercepting of oral communications in David's Office without David's consent for Count III: Recovery of Civil Damages pursuant to 18 U.S.C. SS. 2520 (Federal Wiretapping Act)

[12] These allegations relate to the use of information from David's conversations as litigation strategy and that a reasonable person should not fear his oral communications are being intercepted for Count III.

[13] These allegations relate to Diane's direction of the placement of recording devices in David's office leading to the interception of privileged attorney client communications and Diane and Diane's Bodyguards listening in on David's conversations for Count IV: Intrusion Upon Seclusion;

[14] These allegatiosn relate to the unauthorized entry into David's real and personal property for Count V: Trespass.

[15] These allegations relate to Defendants' agreement to eavesdrop, stalk, harass and illegally collect information about David for Count VI: Civil Conspiracy.

[16] Details relating to what each specific allegation are outlined above. For allegations 15-23, see footnote 1, *supra*. For allegations 25-35, see footnote 2, *supra*.

[17] Details relating to what each specific allegation are outlined above. For allegations 42-48 and 56, see footnote 3, *supra*.

[18] These allegations relate to text messages David received from July 21, 2015 to July 23, 2015.

[19] Details relating to what each specific allegation are outlined above. For allegations 69-70, see footnote 3, *supra*. For allegation 75, see footnote 4, *supra*.

[20] Allegation 81 relates to Bucon pleading guilty in his criminal case. Details relating to what each specific allegation are outlined above. For allegations 82-83, see footnote 5. For allegations 84-87, see footnote 6. For allegation 88, see footnote 7. For allegations 92-93, see footnote 8. For allegation 95, see footnote 9. For allegations 96-97, see footnote 10. For allegations 102-106, see footnote 11. For allegations 107-109, see footnote 12. For allegations 113-116, see footnote 13. For allegations 118-120, see footnote 14. For allegations 122-124, see footnote 15.

19. In the Adams Answer, Xtreme adopted Adams invocation of the Fifth Amendment in the following paragraphs of the Fifth Amended Complaint: 15-23, 25-35, 42-48, 56, 62-65, 69-70, 75, 81-88, 92-93, 95-97, 102-109, 113-116, 118-120 and 122-124.[21]

## II. LEGAL STANDARD

20. Summary judgment is appropriate if this Court, after viewing all facts in a light most favorable to the non-movant, finds that no genuine issue of material fact exists and that David is entitled to judgment as a matter of law. *India Breweries, Inc. v. Miller Brewing Co.*, 612 F.3d 651, 658 (7th Cir. 2010); *Wilson v. Souchet*, 168 F.Supp.2d 860, 864 (N.D. Ill. 2001).

## III. ARGUMENT

21. The Court should enter summary judgment because the Magistrate Judge, in entering the Magistrate Order, took the proposed answer filed by Diane as proof that David has established liability. The Magistrate Judge did not provide David with an opportunity to conduct further discovery because Diane's answer, according to the Magistrate, "is the functional equivalent of an admission." *Id*. She stated that Diane has "for all relevant purposes, admitted the fact is true." The Magistrate assumed that the assertion of the Fifth Amendment is a "gift of liability" and the "functional equivalent of an admission." The Magistrate stated she was "perplexed" by the distinction between admitting an allegation or pleading the Fifth Amendment in response to the allegation. Thus, by the Magistrate Order and the District Court's subsequent refusal to modify or set aside any portion of the Magistrate Order, Diane's Answer has established liability in this case and David is entitled to summary judgment. Additionally, by granting the Adams Renewed Motion, which requested the Court find similarly as it did to Diane based on its

---

[21] Details relating to what each specific allegation are outlined above, in footnotes 16-20, *supra*.

functional admissions in the Adams Answer, the Adams Answer has established liability for Adams and Xtreme in this case.

22. Rule 8(b)(6) states: "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required an allegation is considered denied or avoided." Courts in this District have held that Rule 8(b)(6) means exactly what it says. See *King Vision Pay Per View Ltd., v. J.C. Dimitri's Restaurant, Inc.*, 180 F.R.D. 332, 334 (N.D. Ill. 1998) (where defendants answered allegations by stating that the allegations were '[n]either admit[ted] nor den[ied]," the court held "the allegations to have been admitted.").

23. Here, both the Diane Answer and the Adams Answer neither admit nor deny virtually all the factual allegations as to liability of the Fifth Amended Complaint. Thus, pursuant to the application of Rule 8(b)(6), these averments are deemed to be admitted. In fact, the Magistrate Judge reiterated this legal theory, stating that "asserting the privilege in an answer, and thus failing to deny an allegation is the functional equivalent of an admission" in the Magistrate Order.

24. In addition, to the extent any further evidence is needed, the undisputed testimony of Defendant, Michael Bucon, on several occasions proves all of David's allegations. Among other things, Bucon admitted being hired by Adams; placing a listening device in David's office; sending threatening text messages to David; reporting his activities to Adams; and pleading guilty to criminal trespassing and cyber stalking. *See* Exhibit 1 to Motion for Summary Judgment at paragraphs 26-27; Statement of Facts at paragraphs 19, 115 and 116.

25. Thus, Diane, Adams and Xtreme, through their invocation of the Fifth Amendment in their Answers to the Fifth Amended Complaint have effectively admitted liability for all counts

of the Fifth Amended Complaint pursuant to Rule 8(b)(6) and the Magistrate Order. See paras. 17-19, *supra*. In addition, dispositive and undisputed evidence consisting of the testimony of Michael Bucon constitutes further proof of all the allegations requiring the finding of liability against the Defendants. Consequently, David is entitled to summary judgment.

WHEREFORE, Plaintiff, David Israel, prays that the Court that the Court enter summary judgment in favor of David Israel and against Defendants, Diane Israel, James Adams and Xtreme Protection Services, LLC; and for such other relief as the court deems appropriate.

**DAVID ISRAEL,** Plaintiff

By: /s/ Ariel Weissberg
One of his attorneys

Ariel Weissberg, Esq. (No. 03125591)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, IL 60605
T. 312-663-0004
Email: ariel@weissberglaw.com

## CERTIFICATE OF SERVICE

      I, Ariel Weissberg, certify that on October 24, 2018, I caused to be filed **DAVID ISRAEL'S MEMORANDUM OF LAW IN SUPPORT OF DAVID ISRAEL'S MOTION FOR SUMMARY JUDGMENT.** Notice of this filing was sent to all parties registered to receive notice in this case by electronic transmission through the court's CM/ECF system.

                                  /s/ Ariel Weissberg
                                    Ariel Weissberg