**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID ISRAEL, | ) | Case No. 17-cv-06452 |
| Plaintiff, | ) | Consolidated with Case No. 17-cv-06643 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle, Sr. |
| | ) | Room 2341 |
| MICHAEL BUCON, individually and | ) | |
| as agent of James Adams and Xtreme | ) | |
| Protection Services, LLC, JAMES | ) | Magistrate Judge Maria Valdez |
| ADAMS, individually and as agent of | ) | Room 1041 |
| Xtreme Protection Services, LLC and | ) | |
| XTREME PROTECTION SERVICES, | ) | |
| LLC and DIANE ISRAEL | ) | |
| | ) | |
| Defendants. | ) | |

**DAVID ISRAEL'S STATEMENT OF UNCONTESTED MATERIAL FACTS
IN SUPPORT OF DAVID ISRAEL'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, David Israel ("David"), by his attorneys, Ariel Weissberg and the

law offices of Weissberg and Associates, Ltd., pursuant to Fed. R. Civ. P. 56 and LR 56.1 of the

Northern District of Illinois, submits *David Israel's Statement of Uncontested Material Facts in*

*Support of David Israel's Motion for Summary Judgment*, as to which there is no genuine issue,

and states as follows:

**FACTS**

**A.      2014 Eavesdropping**

1.      On April 16, 2014, Ronen Moyal ("Moyal") of Gladio Group Security arrived at

David's Office and informed him that he had been hired by Diane to conduct surveillance on

David. Moyal informed that David that his cell phone, David's Office, his Highland Park

Residence and the Gold Coast Condominium are bugged. Diane, Adams and Xtreme cited a lack

of knowledge or information to form a belief in *Diane Israel's Answer to Plaintiff David Israel's*

*Fifth Amended Complaint* (Dkt. No. 412) ("Diane Answer") and *Defendants James Adams and Xtreme Protection Services, LLC Answer to Plaintiff David Israel's Fifth Amended Complaint* (Dkt. No. 415) ("Xtreme/Adams Answer"). Copies of the Diane Answer and Xtreme/Adams Answer are appended hereto as **Exhibits 1** and **2**, respectively. See Ex. 1 Diane Answer ¶10 and Ex. 2 Xtreme/Adams Answer ¶10.

2.     On April 18, 2014, Moyal returned to David's Office conduct a search for listening devices in David's Office and found an electronic surveillance device with a 9-volt battery under David's desk. A picture of the electronic listening device found underneath David's desk is attached hereto as **Exhibit 3**. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶11 and Ex. 2 Xtreme/Adams Answer ¶11.

3.     On April 23, 2014, David's brother Harey Israel ("Harey") contacted Sergeant Strickland of the Northbrook Police Department and at 4:30 PM, the Northbrook Police arrived at David's Office with an evidence technician and took pictures of the electronic listening device. An investigation ensued but no arrests were made. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶12 and Ex. 2 Xtreme/Adams Answer ¶12.

4.     At that time, David was involved in a case pending in the Circuit Court of Cook County, captioned *Harey Israel v. Diane Israel*, Case No. 2012-L-3464 ("Cook County Case"), which alleged tortious interference against Diane with respect Aaron Israel's estate. Adams and Xtreme cited a lack of knowledge or information to form a belief in the Xtreme/Adams Answer. See Ex. 2 Xtreme/Adams Answer ¶14. Diane admitted that David was a party-plaintiff in the

"Cook County Case" and that many of the complaints filed by Harey against Diane contained allegations characterized as "tortious interference." See Ex. 1 Diane Answer ¶14.

**B.** **2015 Eavesdropping and Stalking**

5. In early-2015, after Aaron's passing, Engbrecht referred Bucon, who had recently graduated as the top graduate from Engbrecht's bodyguard school in Florida, to Adams, who had also attended Engbrecht's school. Adams was the personal bodyguard and head of security for Diane. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶15 and Ex. 2 Xtreme/Adams Answer ¶15. See also, *Deposition of Michael Bucon on February 27, 2018 Transcript* appended hereto as **Exhibit 4** ("Bucon Deposition"), p. 11, ll. 1-12. See also, *Second Deposition of Michael Bucon on March 6, 2018 Transcript* ("Second Bucon Deposition"), appended hereto as **Exhibit 5**, p.10, ll. 4-13.

6. In early-2015, Engbrecht flew to Chicago had dinner with Adam and Bucon where he introduced Bucon to Adams and discussed a potential position for Bucon in Diane's security group. Adams stated that he was not looking to add additional people to Diane's security-detail at that time. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶16 and Ex. 2 Xtreme/Adams Answer ¶16. See also, Ex. 4 Bucon Deposition, p. 14, ll 1-23; p. 16, ll. 4-23.

7. Subsequently, around February 2015, Engbrecht called Bucon on his cell phone and informed him that he had work for Bucon, to be done in coordination with Engbrecht. Engbrecht directed Bucon to "tail" Harey Israel, Plaintiff's brother and Diane's brother, and relay field notes and photographs to Engbrecht on a daily basis. Engbrecht provided Bucon with Harey's home address and Harey's license plate to commence his surveilling work. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See

Ex. 1 Diane Answer ¶17 and Ex. 2 Xtreme/Adams Answer ¶17. See also, Ex. 4 Bucon Deposition, p. 27, ll. 9-14; p. 30, ll. 22-24; pp. 32-34; p. 35, ll. 1-22; p. 44, ll. 11-17. See also, Ex. 5 Second Bucon Deposition, p. 35, ll. 14-24; p. 36, ll. 1-14.

8.      Bucon followed Harey on a daily basis from around 6 AM to 9 PM for a period of three months and reported back to Engbrecht his daily field notes and photographs via email. Bucon was also in constant communications with Adams and relayed to him information about Harey's whereabouts and daily activities. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶18 and Ex. 2 Xtreme/Adams Answer ¶18. See also, Ex. 4 Bucon Deposition, p. 28, ll. 15-24; p. 29, ll. 1-2; p. 30, ll. 22-24; pp. 32-34; p. 35, ll. 1-22; p. 44, ll. 11-17. See also, Ex. 5 Second Bucon Deposition, p. 35, ll. 14-24; p. 36, ll. 1-14; p. 57, ll. 7-16.

9.      Adams paid Bucon in cash, using old $100 bills. Adams paid Bucon by meeting him personally at the Chase Bank branch on 2801 Pfingsten Rd, Glenview, IL 60026 (corner of Willow and Pfingsten Roads). Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶19 and Ex. 2 Xtreme/Adams Answer ¶19. See also, Ex. 4 Bucon Deposition, p. 48, ll. 21-24; p. 49, ll. 1-10. See also, Ex. 5 Second Bucon Deposition, p. 51, l. 24; p. 52, ll. 1-20.

10.     In 2014 and 2015, Adams only worked for Diane and had no other clients. Diane instructed Adams to arrange for Bucon to tail Harey and to eliminate any paper trail regarding the surveillance by using cash payments. Diane herself provided Adams with the old $100 bills used to pay Bucon from a box of old money. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶10 and Ex. 2 Xtreme/Adams Answer ¶20.

11.     Around May 2015, Engbrecht and Adams met with Bucon at a Panera Bread in a north-west suburb and informed Bucon that they had another "assignment" for him. The assignment was to "tail" David and report back, as before, his field notes and photographs to Engbrecht. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶21 and Ex. 2 Xtreme/Adams Answer ¶21. See also, Ex. 4 Bucon Deposition, p. 50, ll. 18-24; p. 51; p. 52, ll. 1-16.

12.     Diane instructed Adams and Engbrecht to determine what David was doing on a daily basis. Adams informed Bucon that this work was for Diane. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶22 and Ex. 2 Xtreme/Adams Answer ¶22. See also Ex. 5 Second Bucon Deposition, p. 17, ll. 3-10.

13.     Bucon followed David for a period of one week but was unable to gain access to David's Office, where David spent significant time and where he met with potential business clients and lawyers. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶23 and Ex. 2 Xtreme/Adams Answer ¶23. See also, Ex. 4 Bucon Deposition, p. 53, ll. 17-24; pp. 54-55; p. 56, l. 1.

14.     Bucon reported to Engbrecht and Adams that he was unable to gain access to David's Office. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶25 and Ex. 2 Xtreme/Adams Answer ¶25. See also, Ex. 4 Bucon Deposition, p. 53, ll. 17-24; pp. 54-55; p. 56, l. 1.

15.     Adams contacted Bucon and informed him that Diane believes it's imperative to gain access and listen to conversations in David's Office. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer

¶26 and Ex. 2 Xtreme/Adams Answer ¶26. See also, Ex. 4 Bucon Deposition, p. 86, ll. 9-21. See also, Ex. 5 Second Bucon Deposition, p. 16, ll. 15-18; p. 17, ll. 3-10.

16.     Adams told Bucon that Diane "wants to know what's going on inside the office"[1] and that Diane wants a listening device inside David's Office. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶27 and Ex. 2 Xtreme/Adams Answer ¶27. See also, Ex. 5 Second Bucon Deposition, p. 16, ll. 15-18, p. 17, ll. 3-10.

17.     Bucon informed Adams and Engbrecht that he would do some research on how to gain access to David's Office. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Diane Answer 285 and Ex. 2 Xtreme/Adams Answer ¶28. See also, Ex. 4 Bucon Deposition, p. 93, ll. 13-24.

18.     Subsequently, Adams called Bucon and told him that Diane was "desperate" to know what was happening inside David's Office and instructed Bucon to "get some ears in there." Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶29 and Ex. 2 Xtreme/Adams Answer ¶29. See also, Ex. 4 Bucon Deposition, p. 91, ll. 14-24; pp. 92-93. See also, Ex. 5 Second Bucon Deposition, p. 16, ll. 15-18, p. 17, ll. 3-10.

19.     On or around May 2015, Bucon dressed up as a Fed Ex delivery man and walked inside David's Office and placed a listening device inside the planter in David's Office. See transcript from sentencing proceedings in the case captioned as, *People of the State of Illinois v. Bucon,* in the Circuit Court of Cook County, Case No. 17 CR 956 ("Bucon Criminal Case"), appended hereto as **Exhibit 6** ("Sentencing Transcript"), p. 10. This device had remote capability

---

[1] Quotations from a recorded interview with Bucon conducted on November 21, 2017, by David's counsel.

and could turn on and record conversations when activated from a remote location. Bucon also installed geo-tagging, remote controlled devices on David's cars that could transmit their location to a mobile device. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶30 and Ex. 2 Xtreme/Adams Answer ¶30. See also, Ex. 4 Bucon Deposition, p. 56, ll. 22-24; p. 57, ll. 1-8. See also Ex. 5 Second Bucon Deposition, p. 62, ll. 2-24; pp. 63-66; p. 67, ll. 1-15.

20.    Upon information and belief, another listening device was installed inside David's Office by Bucon, Engbrecht or Adams around the same time as Bucon placed the listening device in the planter. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶31 and Ex. 2 Xtreme/Adams Answer ¶31.

21.    Bucon's phone records indicate that in April and May of 2014 he was in constant contact with Adams (941-234-xxxx) and Engbrecht (386-589-xxxx) and had multiple phone conversations with them, sometimes several times a day. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶32 and Ex. 2 Xtreme/Adams Answer ¶32. See also, Ex. 4 Bucon Deposition, p. 44, ll. 17-24; p. 45, ll. 1-14.

22.    The devices were used to record sensitive information and privileged attorney-client conversations regarding the Cook County Case, the probate case regarding the estate of Aaron Israel ("Aaron") was pending in Cook County, 2014-P-6788 ("Estate Case") and regarding David's business dealings. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶33 and Ex. 2 Xtreme/Adams Answer ¶33.

23. Adams, Bucon, Engbrecht and Diane intercepted oral communications in David's Office and used the information for their personal gain, including to gain an untoward litigation advantage in the Estate Case and in the Cook County Case. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶34 and Ex. 2 Xtreme/Adams Answer ¶34.

24. Diane also intended to use the information gathered by surveillance and eavesdropping to harass, intimidate and blackmail David. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶35 and Ex. 2 Xtreme/Adams Answer ¶35.

25. David met with lawyer Michael Ettinger ("Ettinger") to discuss filing a claim for Intentional Infliction of Emotional Distress against Diane in David's Office with Harey present. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶37 and Ex. 2 Xtreme/Adams Answer ¶37.

26. On August 5, 2015, Ettinger received text messages from phone number (847) 665-9883 that were similar to the text messages that David was also receiving from unknown numbers at the time. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶38 and Ex. 2 Xtreme/Adams Answer ¶38.

27. On August 10, 2015, Ettinger spoke with Officer Meents regarding the text messages received by him and provided him with contact information of his private investigator James Miller who had traced the phone number as being registered to a Deborah Berg of 254 N. Branch, Glenview, IL. Diane, Adams and Xtreme cited a lack of knowledge or information to form

a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶39 and Ex. 2 Xtreme/Adams Answer ¶39.

28.     After that meeting, Ettinger went to his office in Palos Heights, Illinois and saw that the ceiling panel above his desk had been moved. Ettinger confirmed with the landlord and his staff that no one had been at his office to their knowledge. Ettinger understood the intrusion into his private office as a threat from Diane regarding his consultation with David. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶40 and Ex. 2 Xtreme/Adams Answer ¶40.

29.     On August 18, 2015, David was served with a summons and complaint alleging Intentional Infliction of Emotional Distress in the case captioned *Israel v. Israel,* Case No. 2015 L 007862 filed in the Circuit Court of Cook County, Illinois. This was the very cause of action that was discussed by David and Ettinger at the meeting in David's Office. This case was later voluntarily dismissed by Diane. Adams and Xtreme cited a lack of knowledge or information to form a belief in the Xtreme/Adams Answer. See Ex. 2 Xtreme/Adams Answer ¶41. Diane admitted the allegations as to the first and third sentences in the Diane Answer. See Ex. 1 Diane Answer ¶41. Diane cited a lack of knowledge or information to form a belief as to the rest of the allegations in this paragraph. *Id*.

30.     Diane, Adams, Bucon and Engbrecht dialed in to remote-controlled eavesdropping devices and each of them intercepted David's private conversations. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶42 and Ex. 2 Xtreme/Adams Answer ¶42. See also, Ex. 4 Bucon Deposition, p. 56, ll. 22-24; p. 57, ll. 1-8, p. 123, l.2-24; pp. 124-139; p. 140, ll.1-5. See also Ex. 5 Second Bucon Deposition, p. 19, l. 24; p. 20, ll. 1-6; p. 62, ll. 2-24; pp. 63-66; p. 67, ll. 1-15.

31. Diane has _admitted_ to the following facts in this lawsuit:

a. Diane listened to conversation happening in David's Office through the listening devices placed in David's Office. See *Diane Israel's Answers to David Israel's Requests to Admit to Diane Israel* tendered on February 2, 2018 ("Diane Response to RTA") ¶¶14; 38. **Exhibit 7.**

b. Diane instructed Adams to place listening devices in David's Office, David's Highland Park Residence, and David's Gold Coast Condominium. *Id.*, ¶¶9-11; 35.[2]

c. Diane listened to privileged attorney client communications at David's Office. *Id.*, ¶¶39-40.

Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶43 and Ex. 2 Xtreme/Adams Answer ¶43.

32. Adams has _admitted_ to the following facts in this lawsuit:

a. Adams listened to a conversation between David and Ettinger wherein David had discussed filing a lawsuit against Diane for intentional infliction of emotional distress. See *Defendants Xtreme Protection Services, LLC's and James Adams' Responses to Plaintiff's First Requests for Admission* tendered on February 5, 2018 ("Xtreme/Adams Response to RTA") ¶46; **Exhibit 8**.

b. Adams listened to conversations inside David's Office from May 2015 to September 2015. *Id.*, ¶45.

---

[2] Diane recently served amended answers to David's Requests to Admit wherein she withdrew her Fifth Amendment privilege and denied that listening devices were placed inside David's Highland Park Residence or Gold Coast Condominium. She continued to assert the Fifth Amendment with respect to listening devices placed inside David's Office.

Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶43 and Ex. 2 Xtreme/Adams Answer ¶43.

**C.**   **Threatening Text Messages and Discovery of Additional Eavesdropping Devices in 2015**

33.   On July 14, 2015 at around 9:30 PM David was driving from Waukegan, IL to Chicago, IL when he received a text message from an unknown person using the telephone number (847) 379-1068 stating something to the effect of "Hello, how are you doing?" Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶45 and Ex. 2 Xtreme/Adams Answer ¶45. See also, Ex. 4 Bucon Deposition, p. 152, ll. 23-24, p. 153.

34.   David responded to the text message that he did not know who that was, and then over the course of two months he received multiple text messages from (847) 379-1068 (from July 14, 2015 to July 30, 2015) and from (847) 354-4029 (from August 4, 2015 to August 13, 2015) disclosing time-sensitive information that led David to reasonably believe that he was in immediate physical danger. Screenshots of the images along with the date and time stamp of the text messages are attached hereto as **Group Exhibit 9** ("Text Messages"). Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶46 and Ex. 2 Xtreme/Adams Answer ¶46. See also, Ex. 4 Bucon Deposition, pp. 154-166, p. 167, ll. 1-4; p. 169, ll. 18-24; pp. 170-174; p. 175, ll. 1-18. See also, Ex. 5 Second Bucon Deposition, p. 24, ll. 6-24; p. 25, ll. 1-17.

35.   Upon receipt of the second text message stating, "I am your worst nightmare," David was especially concerned about his safety and the safety of his adult children and grandchildren. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the

allegations of this paragraph. See Ex. 1 Diane Answer ¶47 and Ex. 2 Xtreme/Adams Answer ¶47. See also, Ex. 4 Bucon Deposition, p. 154, ll. 22-24; p. 155, l. 1-4; p. 157, ll. 20-24; p. 158, ll. 1-3. See also, Ex. 5 Second Bucon Deposition, p. 24, ll. 6-24.

36.     On July 17, 2015, while David was golfing at the Ravinia Country Club, he got a text message stating, "Don't get too tan. I have a membership here too" from the (847) 379-1068 phone number. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶48 and Ex. 2 Xtreme/Adams Answer ¶48. See also, Ex. 4 Bucon Deposition, p. 164, ll. 5-22.

37.     Concerned that he was being followed, David contacted Moyal and relayed the content of the text messages to him. Moyal trailed David to determine if he was being followed and after trailing David for an extended period of time, informed David that he was not likely being followed but that his car had a tracking device that was beaming his geographical location to unknown persons. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶49 and Ex. 2 Xtreme/Adams Answer ¶49.

38.     Moyal then searched David's car and found a GPS tracking device attached with a magnet underneath the car's rear fender. A picture of the GPS device affixed to David's car is attached hereto as **Exhibit 10.** Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶50 and Ex. 2 Xtreme/Adams Answer ¶50.

39.     When Moyal discovered the GPS device on David's car, David immediately called his brother Alan Israel, who had borrowed David's second car, a Jeep, and was then in Iowa. David informed Alan about a GPS device potentially being attached with a magnet to the back of the car.

Alan pulled into a gas station and conducted a search of the Jeep and found that underneath the rear-fender was a GPS, similar to the one Moyal found on David's BMW. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶51 and Ex. 2 Xtreme/Adams Answer ¶51.

40.     David contacted the Northbrook Police Department on July 17, 2015 at around 5:30 PM and reported the threatening text messages and the GPS devices on both of his cars to the dispatcher. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶52 and Ex. 2 Xtreme/Adams Answer ¶52.

41.     Officer Johnson of the Northbrook Police Department responded to David's complaint and spoke to him about the text messages and the GPS devices attached to his cars. David informed Officer Johnson about contested matters in probate court regarding his father's estate between him and Diane, and about the police complaint he registered in 2014 regarding the audio bug underneath his desk. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶53 and Ex. 2 Xtreme/Adams Answer ¶53.

42.     Officer Johnson took photographs of the GPS tracking device on the BMW that contained within it an AT&T cellular SIM card bearing the number 89014103277703171616. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶54 and Ex. 2 Xtreme/Adams Answer ¶54.

43.     The GPS tracking device was a product of the Electroflip brand and was capable of using the internal cellular chip to transmit its location via text message to any cellphone. Diane,

Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶55 and Ex. 2 Xtreme/Adams Answer ¶55.

44.     On July 19, 2015 at 4:09 PM, David received another text message from the (847) 379-1068 number stating, "The flower pot next to the door. I would like you to look at it. Admire it for a moment." Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶56 and Ex. 2 Xtreme/Adams Answer ¶56. See also, Ex. 4 Bucon Deposition, p. 166, ll. 19-24; p. 167, ll. 1-19.

45.     Upon receipt of this text message, David panicked and conducted a thorough search of his Gold Coast Condominium and found no suspicious items in any flower pots. David sent his brother Harey to conduct a search of all flower pots in David's Office and his Highland Park Residence. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶57 and Ex. 2 Xtreme/Adams Answer ¶57.

46.     David also contacted the Northbrook Police Department and Officer Johnson, Sergeant Peterson and Officer Pozniak responded to David's Office and checked the exterior of the building but did not find any flower pots. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶58 and Ex. 2 Xtreme/Adams Answer ¶58.

47.     The next day, on July 20, 2015, Moyal conducted an internal sweep of David's Office and found another eavesdropping device in a large planter with artificial plants next to the printer directly outside David's inner office. A picture of the eavesdropping device found on the planter in David's Office is attached hereto as **Exhibit 11.** Diane, Adams and Xtreme cited a lack

of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶59 and Ex. 2 Xtreme/Adams Answer ¶59.

48.     David immediately called the Northbrook Police Department to inform them that he had found the eavesdropping device in David's Office. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶60 and Ex. 2 Xtreme/Adams Answer ¶60.

49.     On July 20, 2015, Detective Meents responded to David's Office and met with David, Harey Israel, Moyal and Rahimzadeh (Moyal's co-worker). David showed Detective Meents the 2 inch by 2 inch listening-device, who took the device into evidence after removing the SIM card from the device. The SIM card was also taken into evidence by the Northbrook Police Department. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶61 and Ex. 2 Xtreme/Adams Answer ¶61.

50.     On July 21, 2015, after the Northbrook Police Department had confiscated the device, David received a text from the (847) 379-1068 number telling him, "Hope you now have an idea what I have against you. I call and we discuss or I escalate this to another level." See Group Ex. 9 Text Messages. David immediately became nervous upon receiving this text message and believed that his contact with the Northbrook Police Department would lead to retaliatory action against him. He believed his life and his safety were in immediate danger. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of the first sentence of this paragraph. See Ex. 1 Diane Answer ¶62 and Ex. 2 Xtreme/Adams Answer ¶62. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the

Xtreme/Adams Answer as to the rest of the allegations. See Ex. 1 Diane Answer ¶57 and Ex. 2 Xtreme/Adams Answer ¶57. See also, Ex. 4 Bucon Deposition, p. 171, ll. 18-24; pp. 172-173.

51.     On the same day, David received texts from the (847) 379-1068 number saying, "P.S. All devices have audio recording capability from a remote location." Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶63 and Ex. 2 Xtreme/Adams Answer ¶63. See also, Ex. 4 Bucon Deposition, p. 171, ll. 18-24; pp. 172-173; p. 178, ll. 13-23.

52.     On that same day, David received a text message saying, "A bit hot to be wearing that shirt don't you think David? Let's see where you end up I'm not too far." These texts placed David in immediate apprehension because he believed that someone was in close vicinity to him and was stalking him as he walked in a long-sleeved shirt on a hot day. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶64 and Ex. 2 Xtreme/Adams Answer ¶64. See also, Ex. 4 Bucon Deposition, p.171, ll. 18-24; pp. 172-173; p. 178, l. 24; p. 179, ll. 1-19.

53.     On July 23, 2015, David receives at text message from (847) 379-1068 saying, "We are all coming for you David." David, in attempting to respond to Harey, mistakenly responds here, "Just got this. I'm in a meeting until 3:15 and we'll talk then." David receives a reply, "That's okay. I'll continue to listen." David was especially concerned that private business meetings and phone calls in his David's Office and private personal matters in his Gold Coast Condominium and Highland Park Residence were being recorded or bugged. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶65 and Ex. 2 Xtreme/Adams Answer ¶65. See also, Ex. 4 Bucon Deposition, p.174; p. 175, ll. 1-18; p. 181, l. 24; p. 182, ll. 1-18. See also, Ex. 5 Second Bucon Deposition, p. 25, ll. 1-11.

54.     Because of the discovery of listening devices and the threatening text messages, David altered his lifestyle. He would communicate his plans for the following day to his brother Harey the night before, including when and where he was traveling to in order for Harey to monitor his location and his safety. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶66 and Ex. 2 Xtreme/Adams Answer ¶66.

55.     Furthermore, David stopped visiting his children and grand-children as often as used to because he was concerned that an attack on him when they were present would end up hurting his family members. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶67 and Ex. 2 Xtreme/Adams Answer ¶67.

56.     David applied for a gun-license and a concealed carry permit to defend himself. This concealed carry permit was initially rejected by authorities and David had to appeal the decision that led to the incurrence of legal fees. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶68 and Ex. 2 Xtreme/Adams Answer ¶68.

57.     On August 11, 2015, David received the following text from (847) 379-1068, stating, "hey David hope your week is going well, wanted to give you a little more information prior to us meeting. By now you have attempted to uncover all the little ears that we have places…..but I'm willing to bet you missed several….there was a teddy bear sent to you awhile back from a cancer center……you might want to open the bear up, a big surprise awaits…..we know everything and have been listening for quite a while…keep that in mind, see you soon."

Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶69 and Ex. 2 Xtreme/Adams Answer ¶69.

58.     Prior to August 11, 2015, David had received a teddy bear from a cancer center thanking him for his charitable donation. David had placed this teddy bear on a credenza in his office near his desk. On August 3, 2015, David and Harey had superficially searched the pink teddy bear on the credenza but did not feel anything hidden in the stuffing. They became concerned that the teddy bear could have a sophisticated wiretap hidden within it. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶70 and Ex. 2 Xtreme/Adams Answer ¶70.

59.     Later that day, Moyal came to David's office and cut open the teddy bear and inside the teddy bear was a listening device which contained an AT&T cellular SIM card number 89014103278021134450. A copy of the pink teddy bear on the credenza with the listening device inside it is attached hereto as **Exhibit 12.** Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. Diane did not contest the allegations in the paragraph. See Ex. 1 Diane Answer ¶71 and Ex. 2 Xtreme/Adams Answer ¶71.

60.     On August 24, 2015, Officer Meents of the Northbrook Police Department received from AT&T information responding to a subpoena he had sent them regarding the (847) 379-1068 number and the SIM cards from the GPS tracking device on David's BMW. The SIM card had from the period of July 6, 2015 to July 17, 2015:

        a.      2,033 calls/texts that originated from the GPS tracker and terminated to 312-953-0300

b.      651 calls/texts that originated from the GPS tracker and terminated to 262-422-1380.

c.      98 calls/texts that originated from 312-953-0300 and terminated to the GPS tracker

d.      6 calls/texts that originated from 288-090-0909 and terminated to the GPS tracker.

Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief in the Diane Answer and the Xtreme/Adams Answer. Diane did not contest the allegations contained in this paragraph. See Ex. 1 Diane Answer ¶72 and Ex. 2 Xtreme/Adams Answer ¶72. See also, Ex. 4 Bucon Deposition, p.197, l. 24; p. 198, ll. 1-21.

61.     Officer Meents then sent subpoenas to AT&T and Verizon Wireless regarding the phone numbers mentioned above. Verizon and AT&T responded to the subpoenas on September 2, 2015 and provided that 312-953-0300 belonged to Michael Bucon with an address of 6719 S. 91st St., Oak Lawn, Illinois. Verizon Wireless subpoena-response shows phone 262-422-1380 belonged to Michael Bucon, with an address of 1600 Michigan Blvd., Racine, Wisconsin. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief but did not contest the allegations in the paragraph in the Diane Answer and the Xtreme/Adams Answer. Diane did not contest the allegations contained in this paragraph. See Ex. 1 Diane Answer ¶74 and Ex. 2 Xtreme/Adams Answer ¶74.

62.     Bucon's phone records reveal that he was in constant communications with Adams and Engbrecht with both phone calls and text messages from April 2015 to September 2015. Bucon and Adams sent more than 200 text messages to each other during this time frame and made

numerous phone calls. Bucon and Engbrecht sent around 100 text messages to each other during this time frame and also made numerous phone calls. Diane, Adams and Xtreme asserted the Fifth Amendment, but did not contest the allegations of this paragraph. See Ex. 1 Diane Answer ¶75 and Ex. 2 Xtreme/Adams Answer ¶75. See also, Ex. 4 Bucon Deposition, p. 44, ll. 17-24; p. 45, ll. 1-14.

63. On April 4, 2016, the Department of Homeland Security contacted Officer Meents and informed him that Bucon was on a flight from Mexico to Chicago-O'Hare International Airport. Officer Delderfield of the O'Hare tactical unit took custody of Bucon and arrested him and transported him to 26th and California. Diane, Adams and Xtreme cited a lack of knowledge or information to form a belief but did not contest the allegations in the paragraph in the Diane Answer and the Xtreme/Adams Answer. See Ex. 1 Diane Answer ¶76 and Ex. 2 Xtreme/Adams Answer ¶76.

64. Bucon pleaded guilty in the Bucon Criminal Case to criminal trespass and attempt cyber stalking. See Ex. 6 Sentencing Transcript. Diane cited a lack of knowledge or information to form a belief but did not contest the allegations in the paragraph in the Diane Answer. See Ex. 1 Diane Answer ¶77 Adams and Xtreme admitted that Bucon pled guilty as reflected in the transcript. See Ex. 2 Xtreme/Adams Answer ¶77. See also, Ex. 4 Bucon Deposition, p. 226, ll. 9-11. See also, Ex. 5 Second Bucon Deposition, p. 34, ll. 16-19.

## FACTS OF THE CASE

**A.** **Complaints and Related Pleadings**

65. On September 7, 2017, Defendants James Adams ("Adams)" and Xtreme Protection Services, LLC ("Xtreme"), with the written consent of Defendant Michael Bucon ("Bucon"), (collectively, "Defendants") filed a Notice of Removal to remove the state court action captioned as, *David Israel v. Michael Bucon, individually and as agent of James Adams and Xtreme Protection Services, LLC, James Adams, individually and as agent of Xtreme Protection Services, LLC and Xtreme Protection Services, LLC*, 17-L-006026 ("Adams State Court Action"), to the United States District Court for the Northern District of Illinois, Eastern Division (Dkt. No. 1).

66. At the time that the Notice of Removal was filed, there was pending Plaintiff's *Amended Verified Third Amended Complaint* ("Third Amended Complaint").

67. On September 14, 2017, the Adams Defendants filed their *Motion to Dismiss "Amended" Third Amended Complaint* (Dkt. No. 13) ("Adams Motion to Dismiss"), and *Memorandum in Support of Motion to Dismiss Complaint* (Dkt. No. 15).

68. On October 13, 2017, David filed *Plaintiff's Response to Defendants James Adams and Xtreme Protection Services LLC's Motion to Dismiss* (Dkt. No. 37).

69. On November 3, 2017, the Adams Defendants filed their Reply Memorandum in support of Motion to Dismiss Complaint (Dkt. No. 56).

70. On September 14, 2017, Defendant, Diane Israel ("Diane"), filed a Notice of Removal to remove the state court action captioned as, *David Israel v. Diane Israel*, 17-L-7184 ("Diane State Court Action"), to the United States District Court for the Northern District of Illinois, Eastern Division ("Diane Case").

71. At the time that the Notice of Removal was filed, there was pending Plaintiff's *Verified Amended Complaint*.

72.     On September 22, 2017, Diane filed a *Defendant's Motion to Dismiss the Verified Amended Complaint* (Diane Case Dkt. No. 13) ("Diane Motion to Dismiss").

73.     On October 20, 2017, David filed *Plaintiff's Response to Defendant's motion to Dismiss the Verified Amended Complaint* (Diane Case Dkt. No. 17).

74.     On November 14, 2017, Diane filed *Diane Israel's Reply in Support of Motion to Dismiss the Verified Amended Complaint* (Diane Case Dkt. No. 22).

75.     On September 20, 2017, Diane filed a *Defendant's Motion to Reassign Pursuant to Local Rule 40.4 and for Consolidation Pursuant to Fed. R. Civ. P. 42(A)* (Dkt. No. 20) ("Motion to Consolidate").

76.     On October 13, 2017, David filed *Plaintiff's Response to Diane Israel's Motion for Reassignment and for Consolidation* (Dkt. No. 38).

77.     On October 20, 2017, Diane filed *Plaintiff's Reply in Support of her Motion to Reassign Pursuant to Local Rule 40.4 and for Consolidation Pursuant to Fed. R. Civ. P. 42(A)* (Dkt. No, 44).

78.     On December 7, 2017, the Court granted Diane's Motion to Consolidate. (Dkt. No. 70).

79.     On January 9, 2018, Plaintiff filed his Second Amended Complaint against Diane and Shawn Engbrecht.[3]

80.     On January 30, 2018, Diane filed *Diane Israel's Motion to Dismiss Second Amended Complaint* (Diane Case Dkt. No. 30) ("Diane Motion to Dismiss Second Amended Complaint").

---

[3] Engbrecht was not a named defendant in the Amended Complaint and was added as a defendant for the first time in the Second Amended Complaint.

81.     On February 16, 2018, David filed *Plaintiff's Response to Defendant, Diane Israel's Motion to Dismiss Second Amended Complaint* (Diane Case Dkt. No. 33).

82.     On February 23, 2018, Diane filed *Diane Israel's Reply in Support of Motion to Dismiss Second Amended Complaint* (Diane Case Dkt. No. 34).

83.     On June 14, 2018, the Court denied the Adams Motion to Dismiss, the Diane Motion to Dismiss and the Diane Motion to Dismiss Second Amended Complaint (Dkt. No. 287).

84.     On July 11, 2018, David filed *Fourth Amended Complaint* against Adams, Bucon, Engbrecht, Diane and Xtreme. (Dkt. No. 330).

85.     On July 25, 2018, David filed *Plaintiff's Agreed Motion for Leave to file Fifth Amended Complaint* (Dkt. No. 358) ("Motion for Leave").

86.     On August 2, 2018, the Court granted the Motion for Leave and ordered Plaintiff to submit a more definite statement (Dkt. No. 372).

87.     On August 15, 2018, David filed *Fifth Amended Complaint* against Adams, Bucon, Engbrecht, Diane and Xtreme. (Dkt. No. 387) ("Fifth Amended Complaint").

88.     On August 29, 2018, Diane filed *Diane Israel's Answer to Plaintiff David Israel's Fifth Amended Complaint* (Dkt. No. 412) ("Diane Answer"). In the Diane Answer, Diane responds to virtually all of the factual allegations as follows: "Based upon the assertion of her rights under the Fifth Amendment to the United States Constitution, Diane neither admits nor denies the allegations of paragraph __."

89.     On August 30, 2018, James and Xtreme filed *Defendants James Adams and Xtreme Protection Services, LLC Answer to Plaintiff David Israel's Fifth Amended Complaint* (Dkt. No. 415) ("Xtreme/Adams Answer"). In the Xtreme/Adams Answer, Adams responds to virtually all of the factual allegations as follows: "Adams declines to answer the allegations of paragraph __

based on the assertion of his rights under the Fifth Amendment to the United States Constitution. Without waiving his assertion of the Fifth Amendment, however, Adams will not contest the allegations of paragraph __."

**B.** **Discovery in the Case**

90. On June 15, 2017, David tendered to Adams, Bucon and Xtreme: (a) *Plaintiff's First Set of Interrogatories to Defendant, James Adams*; (b) *Plaintiff's First Set of Interrogatories to Defendant Michael Bucon*; (c) *Plaintiff's First Set of Interrogatories to Defendant, Xtreme Protection Services, LLC*; (d) *Plaintiff's First Request for Production of Documents to James Adams*; (e) *Plaintiff's First Request for Production of Documents to Michael Bucon*; (f) *Plaintiff's First Requests for Inspection to Defendant James Adams*; and (g) *Plaintiff's First Requests for Inspection to Defendant Michael Bucon* in the Adams State Court Action.

91. On July 11, 2017, Adams and Xtreme tendered to David: (a) *Defendants James Adams' and Xtreme Protection Services, LLC's First Set of Interrogatories to Plaintiff*; and (b) *Defendants James Adams' and Xtreme Protection Services, LLC's First Requests for Production of Documents to Plaintiff* in the Adams State Court Action.

92. On July 13, 2017, Adams tendered to David: (a) *Defendant James Adams' Answers to Plaintiff's First Set of Interrogatories*; (b) *Defendant James Adams' Responses to Plaintiff's First Request for Production of Documents*; and (c) *Defendant James Adam's Response to Plaintiff's First Request for Production* (collectively, "Adams First Discovery Responses") in the Adams State Court Action. In the Adams First Discovery Responses, Adams asserted the Fifth Amendment privilege for most of the requests.

93.     On July 13, 2017, Xtreme tendered to David *Defendant Xtreme Protection Services, LLC's Answers to Plaintiff's First Set of Interrogatories* in the Adams State Court Action, asserting the Fifth Amendment privilege for most of the requests.

94.     On July 17, 2017, Adams and Xtreme tendered to David *Defendant James Adams' and Xtreme Protection Services'' First Request for Inspection of Objects, Tangible Things and Real Estate* in the Adams State Court Action.

95.     On August 21, 2017, David tendered to Adams and Xtreme: (a) *Plaintiff's Answers to Defendants James Adams' and Xtreme Protection Services, LLC's First Set of Interrogatories*; and (b) *Plaintiff's Answers to Defendants, James Adams and Xtreme Protection Services, LLC's First Request for Inspection of Objects, Tangible Things and Real Estate.*

96.     On August 23, 2017, David tendered to Adams and Xtreme *Plaintiff's Response to Defendants James Adams' and Xtreme Protection Services, LLC's First Requests for Production of Documents*.

97.     On August 30, 2017, David tendered to Xtreme *Plaintiff's First Request for Production of Documents to Xtreme Protection Services, LLC* in the Adams State Court Action.

98.     On September 11, 2017, David tendered to Diane: (a) *Plaintiff's First Requests for Inspection to Diane Israel*; and (b) *Plaintiff's First Request for Production of Documents to Diane Israel* in the Diane State Court Action.

99.     On September 15, 2017, David tendered to Diane *Plaintiff's First Set of Interrogatories to Defendant, Diane Israel* in the Diane Case.

100.    On September 29, 2017, Xtreme tendered to David *Defendant Xtreme Protection Services, LLC's Responses to First Request for Production of Documents* in the instant case.

101.     On October 25, 2017, David tendered to Diane *Plaintiff's Initial Rule 26(a)(1) Disclosures* in the Diane Case.

102.     On November 16, 2017, Adams and Xtreme tendered to David: (a) *Defendants James Adams' and Xtreme Protection Services, LLC's Second Requests for Production of Documents to Plaintiff*; and (b) *Defendants James Adams' and Xtreme Protection Services, LLC's Second Set of Interrogatories to Plaintiff* in the instant case.

103.     On November 30, 2017, Diane tendered to David: (a) *Respondent's Answers to Plaintiff's First Set of Interrogatories*; (b) *Defendant's Response to Plaintiff's First Requests for Inspection to Diane Israel*; and (c) *Defendant's Responses to Plaintiff's First Request for Production of Documents* in the Diane Case, asserting her Fifth Amendment privilege for most of the requests.

104.     On December 19, 2017, David tendered to Adams and Xtreme *David Israel's Answer to Defendants, James Adams' and Xtreme Protection Services, LLC's Second Set of Interrogatories to Plaintiff* in the instant case.

105.     On December 21, 2017, Diane tendered to David: (a) *Diane Israel's First Set of Interrogatories to Plaintiff*; and (b) *Diane Israel's First Set of Requests for Production to Plaintiff* in the instant case.

106.     On January 5, 2018, David tendered to Adams and Xtreme *Request to Admit* in the instant case.

107.     On January 5, 2018, David tendered to Diane *David Israel's Requests to Admit to Diane Israel* in the instant case.

108. On January 11, 2018, David tendered to Adams and Xtreme *David Israel's Response to Defendants James Adams' and Xtreme Protection Services, LLC's Second Requests for Production of Documents to Plaintiff* in the instant case.

109. On January 24, 2018, David tendered to Diane: (a) *David Israel's Answer to Defendant, Diane Israel's First Set of Interrogatories to Plaintiff*; and (b) *David Israel's Response to Defendant, Diane Israel's First Set of Requests for Production to Plaintiff* in the instant case.

110. On January 24, 2018, David tendered to Adams *Plaintiff's Supplemental Request for Production of Documents to Defendant James Adams* in the instant case.

111. On February 1, 2018, Adams and Xtreme tendered to David: (a) *Defendant James Adams' Supplemental Answers to Plaintiff's First Set of Interrogatories*; and (b) *Defendant Xtreme Protection Services, LLC's Supplemental Answers to Plaintiff's First Set of Interrogatories* in the instant case, again asserting his Fifth Amendment privilege, but answering any interrogatories required by court order.

112. On February 2, 2018, Diane tendered to David *Diane Israel's Answers to David Israel's Requests to Admit to Diane Israel*.

113. On February 5, 2018, Adams and Xtreme tendered to David *Defendants Xtreme Protection Services, LLC's and James Adams' Responses to Plaintiff's First Requests for Admission* in the instant case.

114. On February 24, 2018, Adams tendered to David *Defendant James Adams' Responses to Second Request for Production of Documents* in the instant case, again asserting his Fifth Amendment privilege for most of the requests.

115. On February 27, 2018, the first deposition of Michael Bucon took place ("First Deposition"). During the First Deposition, Bucon admitted the following facts: (a) Engbrecht

referred him to Adams to surveil Harey and David for Diane; (b) Bucon followed Harey on a daily basis for three months and reported to Engbrecht daily field notes and photographs and these reports would ultimately be tendered to Adams; (c) Adams paid Bucon in cash by meeting him personally at a Chase Bank; (d) Adams told Bucon the importance of gaining access to David's Office and placing a listening device there; (e) Bucon researched and actually did place a listening device in David's Office and dialed into the device; (f) Bucon was in constant contact with Adams in April and May 2014 and from April 2015 to September 2015; (g) Bucon sent threatening text messages to David in July 2015; and (h) Bucon pleaded guilty in the Bucon Criminal Case to criminal trespass and attempt cyber stalking. See Ex. 4 Bucon Deposition, p. 11, ll. 1-12; p. 14, ll 1-23; p. 16, ll. 4-23; p. 27, ll. 9-14; p. 28, ll. 15-24; p. 29, ll. 1-2; p. 30, ll. 22-24; pp. 32-34; p. 35, ll. 1-22; p. 44, ll. 11-24; p. 45, ll. 1-14; p. 48, ll. 21-24; p. 49, ll. 1-10; p. 50, ll. 18-24; p. 51; p. 52, ll. 1-16; p. 53, ll. 17-24; pp. 54-55; p. 56, l. 1, 22-24; p. 57, ll. 1-8; p. 86, ll. 9-21; p. 91, ll. 14-24; pp. 92-93; p. 123, l.2-24; pp. 124-139; p. 140, ll.1-5; p. 152, ll. 23-24, p. 153; pp. 154-166, p. 167, ll. 1-19; p. 169, ll. 18-24; pp. 170-174; p. 175, ll. 1-18; p. 178, ll. 13-24; p. 179, ll. 1-19; p. 181, l. 24; p. 182, ll. 1-18; p. 226, ll. 9-11.

116.    On March 6, 2018, the second deposition of Michael Bucon took place ("Second Deposition"). During the Second Deposition, Bucon admitted the following facts: (a) Engbrecht referred him to Adams to surveil Harey and David for Diane; (b) Bucon followed Harey on a daily basis for three months and reported to Engbrecht daily field notes and photographs and these reports would ultimately be tendered to Adams; (c) Adams paid Bucon in cash by meeting him personally at a Chase Bank; (d) Adams told Bucon the importance of gaining access to David's Office and placing a listening device there; (e) Bucon researched and actually did place a listening device in David's Office and dialed into the device; (f) Bucon sent threatening text messages to

David in July 2015; and (g) Bucon pleaded guilty in the Bucon Criminal Case to criminal trespass and attempt cyber stalking. See Ex. 5 Second Bucon Deposition, p.10, ll. 4-13; p. 16, ll. 15-18; p. 17, ll. 3-10; p. 19, l. 24; p. 20, ll. 1-6; p. 24, ll. 6-24; p. 25, ll. 1-17; p. 34, ll. 16-19; p. 35, ll. 14-24; p. 36, ll. 1-14; p. 51, l. 24; p. 52, ll. 1-20; p. 57, ll. 7-16; p. 62, ll. 2-24; pp. 63-66; p. 67, ll. 1-15.

117. On March 28, 2018, David tendered to Diane *David Israel's Answer to Defendant, Diane Israel's Interrogatory No. 5 to Plaintiff* in the instant case.

118. On April 23, 2018, David tendered to Diane: (a) *David Israel's Supplemental Answers to Defendant, Diane Israel's First Set of Interrogatories to Plaintiff*; and (b) *David Israel's Second Supplemental Answer to Defendant, Diane Israel's Interrogatory No. 5 to Plaintiff* in the instant case.

119. On April 23, 2018, David tendered to Adams and Xtreme *David Israel's Supplemental Answer to Defendants, James Adams' and Xtreme Protection Services, LLC's Second Set of Interrogatories to Plaintiff* in the instant case.

120. On May 2, 2018, Adams and Xtreme tendered to David: (a) *Defendants James Adams' and Xtreme Protection Services, LLC's Third Request for Production of Documents to Plaintiff* in the instant case.

121. On May 4, 2018, Diane tendered to David *Diane Israel's Second Set of Discovery Requests to Plaintiff* in the instant case.

122. On May 18, 2018 Diane tendered to David *Diane Israel's Third Set of Interrogatories to David Israel* in the instant case.

123.    On May 31, 2018, David tendered to Adams and Xtreme *Plaintiff's Response to Defendants James Adams' and Xtreme Protection Services, LLC's Third Request for Production of Documents to Plaintiff* in the instant case.

124.    On June 13, 2018, David tendered to Diane *David Israel's Supplemental Answer to Defendant, Diane Israel's Interrogatory No. 5 to Plaintiff* in the instant case.

125.    On July 30, 2018, David tendered to Defendants *Fed. R. Civ. P. 26(a)(2) Opinion/Expert Witness Disclosures of Plaintiff, David Israel* in the instant case.

126.    On August 6, 2018, David tendered to Diane *Plaintiff's Response to Diane Israel's Second Set of Discovery Requests to Plaintiff* in the instant case.

127.    On August 8, 2018, Diane tendered to David: (a) *Respondent's Revised Answers to Plaintiff's First Set of Interrogatories Nos. 2, 3 and 5 Pursuant to May 30, 2018 Court Order*; and (b) *Diane Israel's Revised Answers to David Israel's Requests to Admit to Diane Israel Nos. 1, 5, 10, 11, 18, 19, 24, 55 and 56 Pursuant to May 30, 2018 Court Order* in the instant case, again asserting his Fifth Amendment privilege, but answering any interrogatories required by court order.

128.    On September 20, 2018, Diane tendered to David *Diane's Fed. R. Civ. P. 26(a)(2)(B) Disclosures* in the instant case.

129.    On October 11, 2018, David tendered to Adams *Plaintiff's Third Request for Production of Documents to James Adams* in the instant case.

**C.    <u>Diane's Motion to Limit</u>**

130.    On May 14, 2018, Diane filed *Diane Israel's Motion for Protective Order limiting Discovery on Liability Issues* (Dkt. No. 187) ("Diane Motion to Limit").

131.    On May 21, 2018, David filed *Plaintiff's Response to Defendant, Diane Israel's Motion for Protective Order Limiting Discovery on Liability Issues (Dkt. No. 187)* (Dkt. No. 223) ("David Response to Diane").

132.    On May 23, 2018, Diane filed *Diane Israel's Reply in Support of her Motion for Protective Order Limiting Discovery on Liability Issues (Dkt. 187)* (Dkt. 230) ("Diane Reply").

133.    On May 30, 2018, Magistrate Judge Valdez entered an order on, among other things, Diane's Motion to Limit ("Magistrate Order"). A copy of the Magistrate Order is appended hereto as **Exhibit 13**. The Magistrate Order called Diane's answer a "gift of a liability admission," and claimed that "asserting the privilege in an answer, and thus failing to deny an allegation is the functional equivalent of an admission."

134.    On June 13, 2018, Plaintiff filed *Plaintiff, David Israel's Objections to the Magistrate's Order Issued on May 30, 2018 (DE 243) pursuant to Civil Procedure Rule 72(a)*.

135.    On September 20, 2018, the District Court entered an order declining to modify or set aside any portion of the Magistrate Order (Dkt. No. 471) ("District Order"). A copy of the District Order is appended hereto as **Exhibit 14**.

**D.    Adams' Motion to Limit**

136.    On August 20, 2018, Adams filed *Defendant James Adams's Motion to Determine that Certain of the Court's Rulings Apply Equally to Him and Unopposed Motion to Amend the Court's Order Regarding his Disposition* (Dkt. 395) ("Adams Motion to Limit").

137.    On August 23, 2018, the Court denied the Adams Motion to Limit (Dkt. 400) ("Adams Initial Order").

138. On September 7, 2018, Adams filed *Defendant James Adams's Renewed Motion – After Having Answered the Complaint and Indicated Areas of No Contest – to Limit Discovery About Liability* (Dkt. 436) ("Adams Renewed Motion").

139. On September 19, 2018, David filed *Plaintiff's Response to James Adams Renewed Motion to Limit Discovery About Liability* (Dkt. 464) ("David Response to Adams").

140. On September 21, 2018, Adams filed *Defendant James Adams's Reply in Support of His Renewed Motion to Limit Discovery About Liability* (Dkt. 470) ("Adams Reply").

141. On October 4, 2018, the Magistrate Judge entered an order granting Adams Renewed Motion (Dkt. 475) ("Adams Second Order"). A copy of the Adams Second Order is appended hereto as **Exhibit 15**.

### E.     Requests for Admission Relating to Diane Israel

142. Diane Israel responded by admitting the following allegation: Diane is an individual residing in Cook County, Illinois. See *Diane Israel's Revised Answers to David Israel's Requests to Admit to Diane Israel Nos. 1, 5, 10, 11, 18, 19, 24, 55 and 56 Pursuant to May 30, 2018 Court Order* tendered on August 8, 2018 ("Diane Revised Response to RTA"), appended hereto as **Exhibit 16**, ¶1. See Ex. 1 Diane Answer ¶2.

143. Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane has retained or employed James Adams since at least mid-2012 until and through December 31, 2017 in connection with bodyguard, security and surveillance services. See Ex. 7 Diane Response to RTA ¶2.

144. Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane retained the services of Xtreme in connection with bodyguard, security

and surveillance services since at least mid-2012 and continuing through to December 31, 2017. See Ex. 7 Diane Response to RTA ¶3.

145.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane requested and received bodyguard, security and surveillance services uninterrupted from mid-2012 through December 31, 2017 from Adams and/or Xtreme. See Ex. 7 Diane Response to RTA ¶4.

146.    Diane Israel responded by denying the following allegation: Diane retained Ronen Moyal from 2012 to 2014 in connection with bodyguard, security and surveillance services. See Ex. 16 Diane Revised Response to RTA ¶5.

147.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane discussed with Adams and/or Engbrecht legal actions pending against her, including the case captioned *Israel v. Israel,* pending the Circuit Court of Cook County as Case No. 2012-L-003464. See Ex. 7 Diane Response to RTA ¶6.

148.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to conduct surveillance on Harey Israel from February 2015 through April 2015. See Ex. 7 Diane Response to RTA ¶7.

149.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane received surveillance reports from Engbrecht, individually or in his capacity of an officer of CASS Global, or from Adams that detailed the surveillance of Harey Israel from February 2015 through April 2015. See Ex. 7 Diane Response to RTA ¶8.

150.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to place listening devices in David's Office on or around May 2015. See Ex. 7 Diane Response to RTA ¶9.

151.     Diane Israel responded by denying the following allegation: Diane instructed Adams to place listening devices in David's Highland Park residence on or around May 2015. See Ex. 16 Diane Revised Response to RTA ¶10.

152.     Diane Israel responded by denying the following allegation: Diane instructed Adams to place listening devices in David's Gold Coast Condominium on or around May 2015. See Ex. 16 Diane Revised Response to RTA ¶11.

153.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to place GPS tracking devices on David's cars on or around May 2015. See Ex. 7 Diane Response to RTA ¶12.

154.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane wanted to know David's whereabouts and listen to his business and personal conversations to gain an advantage in existing legal actions. See Ex. 7 Diane Response to RTA ¶13.

155.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane listened to conversations happening in David's Office though the listening devices placed in David's Office. See Ex. 7 Diane Response to RTA ¶14.

156.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to listen to conversations happening in David's Office through the listening devices placed in David's cars. See Ex. 7 Diane Response to RTA ¶15.

157.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane retained Engbrecht to assist and facilitate in the surveillance of David and the eavesdropping on David's conversations. See Ex. 7 Diane Response to RTA ¶16.

158. Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to personally or through an agent enter David's Office secretly without David's permission. See Ex. 7 Diane Response to RTA ¶17.

159. Diane Israel responded by denying the following allegation: Diane instructed Adams to personally or through an agent enter David's Highland Park residence secretly without David's permission. See Ex. 16 Diane Revised Response to RTA ¶18.

160. Diane Israel responded by denying the following allegation: Diane instructed Adams to personally or through an agent enter David's Gold Coast condominium without David's permission. See Ex. 16 Diane Revised Response to RTA ¶19.

161. Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane was involved with the planning, executing and cover-up of the eavesdropping and stalking scheme. See Ex. 7 Diane Response to RTA ¶20.

162. Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane involved Engbrecht with the planning, executing and cover-up of the eavesdropping and stalking scheme. See Ex. 7 Diane Response to RTA ¶21.

163. Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane paid Bucon's legal fees in connection with his criminal case in the Circuit Court of Cook County, *People of the State of Illinois v. Bucon* in the Circuit Court of Cook County, Case No. 17 CR 956 ("Bucon Criminal Case"). See Ex. 7 Diane Response to RTA ¶22.

164. Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to pay Bucon's legal fees using Diane's funds. See Ex. 7 Diane Response to RTA ¶23.

165.    Diane Israel responded by both denying and pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams or Moyal to place the listening device (a picture of which is attached as Exhibit 2 to the Second Amended Complaint) in David's Office. See Ex. 16 Diane Revised Response to RTA ¶24.

166.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: In early-2015 Diane instructed Adams to retain a reliable person to add to her security detail and surveil David. See Ex. 7 Diane Response to RTA ¶25.

167.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane was informed by Adams that he had retained Bucon to add to her security detail and surveil David. See Ex. 7 Diane Response to RTA ¶26.

168.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to employ Bucon and pay him and reimburse any of his expenses using Diane's cash funds. See Ex. 7 Diane Response to RTA ¶27.

169.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: from March 2015 through August 2015, Diane received reports of surveillance and pictures of David's whereabouts, per her instructions to Adams. See Ex. 7 Diane Response to RTA ¶28.

170.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane has control over a box of currency with old $100 bills that were minted before 1-1-2001 and that originally belonged to Aaron Israel. See Ex. 7 Diane Response to RTA ¶29.

171.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to pay Bucon from this box of $100 bills or herself provided these bills to Adams. See Ex. 7 Diane Response to RTA ¶30.

172.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to only use cash as means of payment to fund the surveillance and eavesdropping scheme against David. See Ex. 7 Diane Response to RTA ¶31.

173.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane witnessed a cash transaction between Adams and Bucon at the Chase Bank branch on 2801 Pfingsten Rd, Glenview, IL 60026 (corner of Will and Pfingsten Rds.) where Adams paid Bucon in cash. See Ex. 7 Diane Response to RTA ¶32.

174.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane knew that Bucon was conducting surveillance on David. See Ex. 7 Diane Response to RTA ¶33.

175.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane knew that David spent a significant portion of his time in David's Office based on Bucon's reports. See Ex. 7 Diane Response to RTA ¶34.

176.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane knew that Bucon could not gain access to David's Office. See Ex. 7 Diane Response to RTA ¶35.

177.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane gave explicit instructions to place a listening device inside David's Office. See Ex. 7 Diane Response to RTA ¶36.

178.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane wanted to know what David was discussing in David's Office. See Ex. 7 Diane Response to RTA ¶37.

179.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams or Engbrecht to place listening devices inside Adams office, and that it was urgent to place these devices in May 2015. See Ex. 7 Diane Response to RTA ¶38.

180.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane listened to the conversations inside David's Office during May 2015 through September 2015. See Ex. 7 Diane Response to RTA ¶39.

181.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane listened to a conversation between David and Michael Ettinger wherein David had discussed filing a lawsuit against Diane for intentional inflection of emotional distress. See Ex. 7 Diane Response to RTA ¶40.

182.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: based on this discussion, Diane filed a lawsuit against David for intentional infliction of emotional distress. See Ex. 7 Diane Response to RTA ¶41.

183.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams or Engbrecht to surveil and eavesdrop on Michael Ettinger. See Ex. 7 Diane Response to RTA ¶42.

184.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams or Engbrecht to harass Ettinger. See Ex. 7 Diane Response to RTA ¶43.

185.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane paid Bucon for his purchase of the eavesdropping and GPS tracking devices. See Ex. 7 Diane Response to RTA ¶44.

186.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane gave authority to Adams to pay any expenses incurred with surveilling or eavesdropping on David. See Ex. 7 Diane Response to RTA ¶45.

187.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane intended to collect, catalog and threaten the dissemination of sensitive information to pressure, harass and/or intimidate David. See Ex. 7 Diane Response to RTA ¶46.

188.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane intended to use information gathered by surveillance and eavesdropping in litigation pending in the Circuit Court of Cook County. See Ex. 7 Diane Response to RTA ¶47.

189.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane personally listened to conversations between David and David's lawyers. See Ex. 7 Diane Response to RTA ¶48.

190.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams to send messages to David to harass and intimidate him. See Ex. 7 Diane Response to RTA ¶49.

191.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Adams or Bucon to send text messages threatening or implying the threat of physical violence. See Ex. 7 Diane Response to RTA ¶50.

192.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane's intention behind the text messages was to cause emotional distress to David. See Ex. 7 Diane Response to RTA ¶51.

193.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane knew that David had contacted the Northbrook Police Department in connection with the surveillance and eavesdropping. See Ex. 7 Diane Response to RTA ¶52.

194.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: despite knowledge of the Northbrook Police Department being involved, Diane instructed Adams to continue to send threatening messages to David. See Ex. 7 Diane Response to RTA ¶53.

195.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane called or texted the GPS devices installed on David's cars to locate David. See Ex. 7 Diane Response to RTA ¶54.

196.     Diane Israel responded by denying in response to the following allegation: Diane personally used the remote controlled listening devices to listen in to conversations in David's Office. See Ex. 16 Diane Revised Response to RTA ¶55.

197.     Diane Israel responded by denying the following allegation: Diane instructed Adams to eavesdrop on David by using listening devices placed in his Highland Park residence or Gold Coast Condominium. See Ex. 16 Diane Revised Response to RTA ¶56.

198.     Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane instructed Engbrecht to eavesdrop on David by using listening devices placed in his Highland Park residence or Gold Coast Condominium. See Ex. 7 Diane Response to RTA ¶57.

199.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane took actions to ensure that David's gun permit and concealed carry license were rejected. See Ex. 7 Diane Response to RTA ¶58.

200.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane has paid the legal bills of Adams and Xtreme in connection with this lawsuit. See Ex. 7 Diane Response to RTA ¶59.

201.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane has promised to financially support Adams in the Illinois Department of Professional and Financial Regulation's investigation against Xtreme and Adams. See Ex. 7 Diane Response to RTA ¶60.

202.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane was the orchestrator of the scheme to surveil and eavesdrop on David. See Ex. 7 Diane Response to RTA ¶61.

203.    Diane Israel responded by pleading the Fifth Amendment in response to the following allegation: Diane orchestrated the scheme to emotionally harm David. See Ex. 7 Diane Response to RTA ¶62.

**F.      Requests for Admission Relating to James Adams and Xtreme Protection Services, Inc.**

204.    Xtreme Protection Services, LLC ("Xtreme") responded by denying the following allegation: Admit that Xtreme was retained by Diane to conduct surveillance work on Harey Israel from February 2015 to May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶1.

205.    Xtreme responded by denying the following allegation: Admit that Xtreme was retained by Diane to conduct surveillance work on David from February 2015 to May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶2.

206.    Xtreme responded by denying the following allegation: Admit that Xtreme has no other customers for whom it performs services other than Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶3.

207.    Xtreme responded by denying the following allegation: Admit that Bucon provided services for Xtreme relating to the surveillance of David, and the installation of listening devices in David's Office. See Ex. 8 Xtreme/Adams Response to RTA ¶4.

208.    Xtreme responded by denying the following allegation: Admit that Xtreme through Adams, Bucon or another agent installed listening devices in David's Highland Park Home and Gold Coast Condominium. See Ex. 8 Xtreme/Adams Response to RTA ¶5.

209.    Xtreme responded by denying the following allegation: Admit that Xtreme has paid employees or independent contractors from the period of 2013 to 2017 who performed services for or on behalf of Xtreme. See Ex. 8 Xtreme/Adams Response to RTA ¶6.

210.    Xtreme responded by denying the following allegation: Admit that Xtreme failed to provide any training to Bucon when Bucon was retained to conduct surveillance on David. See Ex. 8 Xtreme/Adams Response to RTA ¶7.

211.    Xtreme responded by denying the following allegation: Admit that Diane has paid the legal fees incurred by Xtreme so far in this litigation. See Ex. 8 Xtreme/Adams Response to RTA ¶8.

212.    Xtreme responded by admitting the following allegation: Admit that Adams is sole member of Xtreme. See Ex. 8 Xtreme/Adams Response to RTA ¶9.

213.    Xtreme responded by admitting the following allegation: Admit that Adams controls all decision making aspects with respect to Xtreme. See Ex. 8 Xtreme/Adams Response to RTA ¶10.

214.    Xtreme responded by admitting the following allegation: Admit that Xtreme does not have a written contract with Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶11.

215.    Xtreme responded by denying the following allegation: Admit that Xtreme has received funds from Diane for services rendered by it. See Ex. 8 Xtreme/Adams Response to RTA ¶12.

216.    Xtreme responded by denying the following allegation: Admit that all these funds have been cash payments, with no checks, credit card payments or other types of payment used to pay Xtreme. See Ex. 8 Xtreme/Adams Response to RTA ¶13.

217.    Xtreme responded by denying the following allegation: Admit that Xtreme has not submitted an invoice to Diane for any work performed by it from 2014 to 2017. See Ex. 8 Xtreme/Adams Response to RTA ¶14.

218.    Xtreme responded by denying the following allegation: Admit that Xtreme solicited a referral from Engbrecht to work Diane's security-detail and to surveil and listen to David. See Ex. 8 Xtreme/Adams Response to RTA ¶15.

219.    Xtreme responded by admitting the following allegation: Admit that Xtreme does not have a physical location or office from where it conducts its business. See Ex. 8 Xtreme/Adams Response to RTA ¶16.

220.    Xtreme responded by admitting the following allegation: Admit that Xtreme does not have a phone number associated with its business except Adams' personal home or cellular phone number. See Ex. 8 Xtreme/Adams Response to RTA ¶17.

221.    Xtreme responded by denying the following allegation: Admit that in May 2015, Xtreme had funds in its bank account amounting to less than $1000.00. See Ex. 8 Xtreme/Adams Response to RTA ¶18.

222.    Xtreme responded by denying the following allegation: Admit that in May 2015, Xtreme had no insurance policies to cover for liability arising from any of its surveillance or security businesses. See Ex. 8 Xtreme/Adams Response to RTA ¶19.

223.    Xtreme responded by denying the following allegation: Admit that Xtreme never conducted a background search on Bucon or any other employee or independent contractor or agent hired by Xtreme. See Ex. 8 Xtreme/Adams Response to RTA ¶20.

224.    Xtreme responded by denying the following allegation: Admit that Xtreme is an alter ego of Adams. See Ex. 8 Xtreme/Adams Response to RTA ¶21.

**G.    Requests for Admission Relating to James Adams**

225.    James Adams ("Adams") responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane has retained or employed Adams since at least mid-2012 until and through December 31, 2017 in connection with bodyguard, security and surveillance services. See Ex. 8 Xtreme/Adams Response to RTA ¶1.

226.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams had knowledge about legal actions pending against Diane, including the case captioned *Israel v. Israel,* pending the Circuit Court of Cook County as Case No. 2012-L-003464. See Ex. 8 Xtreme/Adams Response to RTA ¶2.

227.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams had conversations with Diane about David, and that Adams was instructed by Diane to conduct surveillance on Harey Israel from February 2015 onwards and to conduct surveillance on David from April 2015 onwards. See Ex. 8 Xtreme/Adams Response to RTA ¶3.

228.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was present at a dinner meeting in early-2015 where Bucon and Engbrecht were the other parties at dinner. See Ex. 8 Xtreme/Adams Response to RTA ¶4.

229.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams informed Bucon that he will stay in touch with him if he needed a person to conduct surveillance for Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶5.

230.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams had a business relationship with Engbrecht, where Engbrecht was to refer a top graduate from his bodyguard school to Adams to work for Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶6.

231.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams received surveillance reports from Engbrecht or Bucon that detailed the surveillance of Harey Israel from February 2015 through April 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶7.

232.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane instructed Adams to place listening devices in David's Office on or around May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶8.

233.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to place listening devices on David's Office on or around May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶9.

234.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane instructed Adams to place listening devices in David's Highland Park residence on or around May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶10.

235.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to place listening devices on David's Highland Park residence on or around May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶11.

236.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane instructed Adams to place listening devices in David's Gold Coast Condominium on or around May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶12.

237.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to place listening devices on David's Gold Coast Condominium on or around May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶13.

238.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane instructed Adams to place GPS tracking devices on David's cars on or around May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶14.

239.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to place GPS tracking devices on David's cars on or around May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶15.

240.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that pursuant to Diane's directions, Adams wanted to know David's whereabouts and listen to his business and personal conversations to gain an advantage in Diane's existing legal actions. See Ex. 8 Xtreme/Adams Response to RTA ¶16.

241.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams listened to conversations happening in David's Office though the listening devices placed in David's Office. See Ex. 8 Xtreme/Adams Response to RTA ¶17.

242.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was instructed by Diane to listen to conversations happening in David's Office through the listening devices placed in David's cars. See Ex. 8 Xtreme/Adams Response to RTA ¶18.

243.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams retained Engbrecht to assist and facilitate in the surveillance of David and the eavesdropping on David's conversations. See Ex. 8 Xtreme/Adams Response to RTA ¶19.

244.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane instructed Adams to personally or through an agent enter David's Office secretly without David's permission. See Ex. 8 Xtreme/Adams Response to RTA ¶20.

245.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to enter David's Office secretly without David's permission. See Ex. 8 Xtreme/Adams Response to RTA ¶21.

246.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane instructed Adams to personally or through an agent enter David's Highland Park residence secretly without David's permission. See Ex. 8 Xtreme/Adams Response to RTA ¶22.

247.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to enter David's Highland Park Residence secretly without David's permission. See Ex. 8 Xtreme/Adams Response to RTA ¶23.

248.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane instructed Adams to personally or through an agent enter David's

Gold Coast condominium without David's permission. See Ex. 8 Xtreme/Adams Response to RTA ¶24.

249.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to enter David's Gold Coast Office secretly without David's permission. See Ex. 8 Xtreme/Adams Response to RTA ¶25.

250.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was involved with the planning, executing and cover-up of the eavesdropping and stalking scheme. See Ex. 8 Xtreme/Adams Response to RTA ¶25.

251.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that the only reason for Adams to stalk, surveil, harass and eavesdrop on David was because he received these directions from Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶27.

252.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams, Diane and Engbrecht were involved with the planning, executing and cover-up of the eavesdropping and stalking scheme. See Ex. 8 Xtreme/Adams Response to RTA ¶29.

253.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane instructed Adams to pay Bucon's legal fees using Diane's funds. See Ex. 8 Xtreme/Adams Response to RTA ¶29.

254.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams himself or through an agent placed a listening device (a picture of which is attached as Exhibit 2 to the Second Amended Complaint) in David's Office in 2014. See Ex. 8 Xtreme/Adams Response to RTA ¶30.

255. Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that in early-2015, Adams informed Diane about retaining Bucon to conduct surveillance on David. See Ex. 8 Xtreme/Adams Response to RTA ¶31.

256. Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was instructed by Diane to employ Bucon and pay him and reimburse any of his expenses using Diane's cash funds. See Ex. 8 Xtreme/Adams Response to RTA ¶32.

257. Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that from March 2015 through August 2015, on any period therein, Adams received reports of surveillance and pictures of David's whereabouts, from Bucon directly or from Engbrecht. See Ex. 8 Xtreme/Adams Response to RTA ¶33.

258. Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams communicated with Bucon via phone and email from February 2015 to May 2015, and discussed Diane's objectives pertaining to David's surveillance and gave Bucon instructions on how to achieve those objectives, including the placement of listening devices in David's office, the installation of the GPS tracking devices, the eavesdropping on confidential conversations, and the transmittal of text messages to David. See Ex. 8 Xtreme/Adams Response to RTA ¶34.

259. Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams has access to a box of currency with old $100 bills that were minted before 1-1-2001 and that belong to Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶35.

260.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was to pay Bucon from this box of $100 bills. See Ex. 8 Xtreme/Adams Response to RTA ¶36.

261.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams received these bills from Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶37.

262.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was instructed by Diane to only use cash as means of payment to fund the surveillance and eavesdropping scheme against David. See Ex. 8 Xtreme/Adams Response to RTA ¶38.

263.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams paid Bucon at the Chase Bank branch on 2801 Pfingsten Rd, Glenview, IL 60026 (corner of Will and Pfingsten Rds.) for work performed by Bucon relating to surveillance and eavesdropping on David. See Ex. 8 Xtreme/Adams Response to RTA ¶39.

264.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane knew that Bucon was conducting surveillance on David. See Ex. 8 Xtreme/Adams Response to RTA ¶40.

265.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane knew that David spent a significant portion of his time in David's Office based on Bucon's reports. See Ex. 8 Xtreme/Adams Response to RTA ¶41.

266.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams gave explicit instructions to place a listening device inside David's Office. See Ex. 8 Xtreme/Adams Response to RTA ¶42.

267.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams wanted to know what David was discussing in David's Office. See Ex. 8 Xtreme/Adams Response to RTA ¶43.

268.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to place listening devices inside Adams office, and that Adams instructed that it was urgent to place these devices in May 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶44.

269.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams listened to the conversations inside David's Office during May 2015 through September 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶45.

270.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams listened to a conversation between David and Michael Ettinger wherein David had discussed filing a lawsuit against Diane for intentional inflection of emotional distress. See Ex. 8 Xtreme/Adams Response to RTA ¶46.

271.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams would listed to David's conversations, and relay the substance of those conversations to Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶47.

272.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams relayed the Ettinger conversation to Diane. See Ex. 8 Xtreme/Adams Response to RTA ¶48.

273.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was instructed by Diane to surveil and eavesdrop on Michael Ettinger. See Ex. 8 Xtreme/Adams Response to RTA ¶49.

274.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to surveil and eavesdrop on Michael Ettinger. See Ex. 8 Xtreme/Adams Response to RTA ¶50.

275.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon or Engbrecht to harass Ettinger. See Ex. 8 Xtreme/Adams Response to RTA ¶51.

276.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams paid Bucon for his purchase of the eavesdropping and GPS tracking devices. See Ex. 8 Xtreme/Adams Response to RTA ¶52.

277.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams received funds from Diane for the purchase of the eavesdropping and GPS tracking devices. See Ex. 8 Xtreme/Adams Response to RTA ¶53.

278.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane gave authority to Adams to pay any expenses incurred with surveilling or eavesdropping on David. See Ex. 8 Xtreme/Adams Response to RTA ¶54.

279.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams intended to collect, catalog and threaten the dissemination of sensitive information to pressure, harass and/or intimidate David. See Ex. 8 Xtreme/Adams Response to RTA ¶55.

280.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams intended to use information gathered by surveillance and eavesdropping on David in litigation pending in the Circuit Court of Cook County. See Ex. 8 Xtreme/Adams Response to RTA ¶56.

281.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams listened to conversation between David and David's lawyers. See Ex. 8 Xtreme/Adams Response to RTA ¶57.

282.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane was present when Adams listened to conversation between David and David's lawyers. See Ex. 8 Xtreme/Adams Response to RTA ¶58.

283.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane was present when Adams listened to conversations recorded or streamed via the listening devices. See Ex. 8 Xtreme/Adams Response to RTA ¶59.

284.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was instructed by Diane to send messages to David to harass and intimidate him. See Ex. 8 Xtreme/Adams Response to RTA ¶60.

285.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to send text messages threatening or implying the threat of physical violence. See Ex. 8 Xtreme/Adams Response to RTA ¶61.

286.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adam's intention behind the text messages was to cause emotional distress to David. See Ex. 8 Xtreme/Adams Response to RTA ¶62.

287.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to send the text to David, "Hope you now have an idea what I have against you. I call and we discuss or I escalate this to another level" on July 21, 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶63.

288.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to send the text to David, "A bit hot to be wearing that shirt don't you think David? Let's see where you end up I'm not too far" on July 21, 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶64.

289.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to send the text to David, "We are all coming for you David" on July 23, 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶65.

290.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams instructed Bucon to send the text to Michael Ettinger or Adams, himself, sent the following text, "Whose your friend who likes to play?" on August 5, 2015. See Ex. 8 Xtreme/Adams Response to RTA ¶66.

291.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams knew that David had contacted the Northbrook Police Department in connection with the surveillance and eavesdropping. See Ex. 8 Xtreme/Adams Response to RTA ¶67.

292.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that despite knowledge of the Northbrook Police Department being involved, Adams instructed Bucon to continue to send threatening messages to David. See Ex. 8 Xtreme/Adams Response to RTA ¶68.

293.    Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams observed Diane call or text the GPS devices installed on David's cars to locate David. See Ex. 8 Xtreme/Adams Response to RTA ¶69.

294.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane observed Adams call or text the GPS devices installed on David's cars to locate David. See Ex. 8 Xtreme/Adams Response to RTA ¶70.

295.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams personally used the remote controlled listening devices to listen in to conversations in David's Office. See Ex. 8 Xtreme/Adams Response to RTA ¶71.

296.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was instructed by Adams to eavesdrop on David by using listening devices placed in his Highland Park residence or Gold Coast Condominium. See Ex. 8 Xtreme/Adams Response to RTA ¶72.

297.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane has paid the legal bills of Adams in connection with this lawsuit. See Ex. 8 Xtreme/Adams Response to RTA ¶73.

298.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Diane has promised to financially support Adams in the Illinois Department of Professional and Financial Regulation's investigation against Xtreme and Adams. See Ex. 8 Xtreme/Adams Response to RTA ¶74.

299.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams was the co-coordinator and facilitator of the scheme to surveil and eavesdrop on David. See Ex. 8 Xtreme/Adams Response to RTA ¶75.

300.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams encouraged Diane to orchestrate the scheme to emotionally harm David. See Ex. 8 Xtreme/Adams Response to RTA ¶76.

301.     Adams responded by pleading the Fifth Amendment in response to the following allegation: Admit that Adams took all necessary steps to accomplish Diane's objective of causing emotional harm to David. See Ex. 8 Xtreme/Adams Response to RTA ¶77.

**DAVID ISRAEL,** Plaintiff


By: /s/ Ariel Weissberg
One of his attorneys

Ariel Weissberg, Esq. (No. 03125591)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, Illinois 60605
T. 312-663-0004
Email: ariel@weissberglaw.com

## CERTIFICATE OF SERVICE

I, Ariel Weissberg, certify that on November 2, 2018, I caused to be filed **DAVID ISRAEL'S STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF DAVID ISRAEL'S MOTION FOR SUMMARY JUDGMENT**. Notice of this filing was sent to all parties registered to receive notice in this case by electronic transmission through the court's CM/ECF system.

_____/s/ Ariel Weissberg_____
Ariel Weissberg