**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| David Israel, | ) | No. 17-CV-6452 |
| Plaintiff, | ) | Consolidated with |
| v. | ) | No. 17-CV-6643 |
| Michael Bucon, James Adams, Diane Israel, | ) | Hon. Charles R. Norgle Sr. |
| Shawn Engbrecht and Xtreme Protective | ) | U.S. District Court Judge Room 2341 |
| Services, LLC, | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff David Israel ("Plaintiff") alleges that from July 14 to August 11, 2015 he received a series of text messages that he found disturbing. (Dkt. 387, Plaintiff's Fifth Amended Complaint ("5AC") ¶¶ 45, 69.) Plaintiff also alleges that he discovered a GPS tracking device attached to his BMW and electronic eavesdropping devices in or near his office. (*Id.* ¶¶ 49-50, 59, 71.) Plaintiff alleges that former Defendant Michael Bucon[1] and Defendants Diane Israel ("Diane"), James Adams ("Adams") and Xtreme Protective Services, LLC ("Xtreme") were responsible for the text messages and the electronic surveillance devices. Plaintiff contends that Defendants' conduct gives rise to six separate claims.[2]

Defendants answered the 5AC and, in response to 21 of the allegations, Defendants declined to answer based on their Fifth Amendment rights, but averred that they would not contest those allegations. (*See* Exs.[3] 1 and 2, Dkt. 412 and 415 at ¶¶ 4, 6, 15-19, 21-29, 32, 45-46, 48, 56, 75.) For other allegations, however, Defendants asserted their Fifth Amendment rights, but expressly

---

[1] Plaintiff and Bucon a entered into a settlement pursuant to which Bucon agreed to cooperate with Plaintiff, including sitting for a deposition. (Defendants' Statement of Additional Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment ("DSAF") at ¶ 22.)

[2] Count I (Illinois Eavesdropping Act), Count II (Intentional Infliction of Emotional Distress), Count III (Federal Wiretapping Statute), Count IV (Intrusion Upon Seclusion), Count V (Trespass) and Count VI (Civil Conspiracy).

[3] Contemporaneously herewith, Defendants have filed a compendium of exhibits that are cited in Plaintiff's Statement of Uncontested Material Facts ("PSUMF") (Dkt. 506), Defendants' Response to the PSUMF, the DSAF and this brief. All references to exhibits in this brief are contained in the compendium of exhibits.

contested that the devices were capable of transmitting information and reserved the right to provide evidence through third party witnesses that the devices did not work. (*See Id*. at ¶¶ 30-32, 34-35, 42-44, 63, 65, 69, 83, 85-88, 93, 97, 102-109, 113-115, 118, 122-124.) Magistrate Judge Valdez, in turn, limited discovery to issues that were contested and expressly stated that whether the devices worked was one of those contested issues. (Ex. 13, Dkt. 243 at p. 17, n. 6; *see also* Ex. 24, Hr'g Tr. 10/25/2018 at 5:22-6:1.)

Despite this contested issue, Plaintiff now has moved for summary judgment on all six counts. In support, Plaintiff submitted a 301-paragraph Plaintiff's Statement of Uncontested Material Facts ("PSUMF") (Dkt. 492) that fails to comply with Local Rule 56.1 and Fed. R. Civ. P 56 because it: (i) contains scores of irrelevant facts; (ii) states multiple facts in a single paragraph; (iii) cites material that does not support the assertion; and (iv) treats facts that Defendants denied in their answers as if they had been admitted.

Plaintiff also submitted a 14-page motion (Dkt. 491) and 12-page supporting brief. (Dkt. 494.) Shockingly, Plaintiff does *not* go through the elements of each claim and analyze the facts against those elements in either his motion or brief. Instead, he asserts *only one* basis for summary judgment. According to Plaintiff, Magistrate Judge Valdez's discovery order (and this Court's ratification of that Order) means that "[Defendants' Answers have] established liability in this case and [Plaintiff] is entitled to summary judgment." (Dkt. 494 at ¶ 21 at pp. 9-10.)

The Court must deny Plaintiff's motion. At the threshold, Plaintiff's underlying premise – that Defendants' assertion of the Fifth Amendment with respect to any significant matter mandates summary judgment with respect to the entire case – is wrong as a matter of both law and fact. Plaintiff misstates both Defendants' statements in their discovery motions and Magistrate Judge Valdez's (and this Court's) rulings on those motions. Simply, Defendants contested – a contest (twice) acknowledged by Magistrate Judge Valdez – that the devices at issue were capable of

listening and recording data. This factual dispute mandates that the Court deny summary judgment "as to liability" on Counts I (Illinois Eavesdropping Act) and III (Federal Wiretapping Statute) because it is Plaintiff's burden to establish that the alleged devices worked, and Plaintiff offers no evidence that they were.

In addition, the Court should deny Plaintiff's motion based on his failure to comply with numerous aspects of Local Rule 56.1 and Fed. R. Civ. P. 56. The Court should not allow Plaintiff to foist upon the Court the undue burden of sifting through his morass of 301 improperly asserted "facts" to discern the relevant facts that support his motion.

Finally, beyond the procedural reasons for denying Plaintiff's motion, the Court should deny the motion on the merits. Analyzing the uncontested facts against the elements of each claim shows that Plaintiff has not proven the elements of his claims. For example, as to Counts II (Intentional Infliction of Emotional Distress) and IV (Intrusion Upon Seclusion), a summary adjudication of affirmative liability is inconsistent with the nature of the torts themselves, which require qualitative evaluations of conduct and its effects that are inherently jury questions. As to Count V (trespass), there are legal impediments to judgment (summary or otherwise) under even Plaintiff's version of the facts. And, Count VI (Civil Conspiracy) is dependent on the success of the other claims and, therefore, fails.

## I. MAGISTRATE JUDGE VALDEZ'S ORDERS AND DEFENDANTS' ANSWERS TO THE 5AC DO NOT MANDATE A SUMMARY FINDING OF LIABILITY.

The *sole* basis of Plaintiff's motion is his inaccurate statement that:

[B]y the Magistrate Order [granting the motions to limit discovery] and the District Court's subsequent refusal to modify or set aside any portion of the Magistrate Order, [Defendants'] Answer[s] [have] established liability in this case[.]

(Dkt. 494 at ¶ 21, pp. 9-10.) Plaintiff's basic premises – that Magistrate Judge Valdez ruled that Defendants have admitted liability and that Defendants have admitted all facts establishing liability

3

– are wrong as a matter of fact and law.

Plaintiff mischaracterizes the relief sought in Defendants' discovery motions and ignores a crucial limitation that Magistrate Judge Valdez (twice) noted with respect to issues that Defendants did not contest. Defendants filed motions to prevent Plaintiff from taking discovery on issues of liability that they did not contest. (Dkt. 187 (Diane's motion); Dkt. 436 (Adams' motion).) In neither motion did Defendants admit liability or state that they were not contesting all facts related to liability. Defendants stated that they would not contest allegations of the 5AC that certain devices were planted at Plaintiff's office and a GPS tracking device attached to his car. Defendants, however, expressly advised that they contested liability based on the capability of the electronic devices. Diane stated that she would contest the "***capabilities of the purported listening devices***." (Dkt. 187. p. 3, n. 3; emphasis added.) Adams likewise advised he would contest "***the technical capabilities of the purported listening devices***." (Dkt. 436, p. 4, n.1; emphasis added.)

Magistrate Judge Valdez granted Diane's motion, and noted that, with some exceptions, Plaintiff was being given "a gift of a *liability admission*." (Ex. 13, Dkt. 243, p. 17; emphasis added.) Significantly, and contrary to Plaintiff's repeated statements, Magistrate Judge Valdez merely made the common-sense ruling that "no discovery need be had on any allegation that will be admitted[.]" (*Id*., p. 17; *see also* Ex. 15, Dkt. 475 (minute order granting Adams' motion).) Magistrate Judge Valdez did *not* state that Defendants were admitting wholesale liability, but only that they were not contesting certain facts that could ultimately lead to their liability. ***Magistrate Judge Valdez expressly noted one significant liability issue that Defendants contested, stating "[Diane] expects that other witnesses, including Bucon, will testify that the devices did not work."*** (Ex. 13, Dkt. 243, p. 17, n. 6.) Magistrate Judge Valdez made similar comments one day *after* Plaintiff filed this motion:

*I had always understood that there was still an open question about whether or not the*

*listening device was operable and whether, you know, under whoever's fair reading of what the law requires to be proven here, whether that is part of it.*

(Ex. 24, Hr'g Tr.10/25/2018 at 5:22-6:1; emphasis added.)

In sum, while Defendants have not contested 22 facts that could lead to liability[4] – including the fact that Bucon placed devices and sent text messages to Plaintiff – they continue to contest a handful of facts that Plaintiff must prove before liability can be imposed.

## II. PROCEDURAL DEFICIENCIES IN PLAINTIFF'S PAPERS IN SUPPORT OF THE MOTION FOR PARTIAL SUMMARY JUDGMENT MANDATE ITS DENIAL.

Plaintiff sought and obtained leave from the Court to more than triple the 80-paragraph limit of Local Rule 56.1 for their PSUMF. The Court, however, did not give Plaintiff leave to violate virtually every other aspect of the Court's procedural rules.

### A. Plaintiff's Memorandum Is Virtually Useless to the Court.

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Plaintiff has the burden to explain on a count-by-count and element-by-element basis why the Court should grant summary judgment based on those facts. If Plaintiff is entitled to summary judgment "as to liability," then his supporting brief (Dkt. 494) should have identified the liability elements of his six separate causes of action and then analyzed how his statement of facts (Dkt. 492) match up to those elements. Indeed, Fed. R. Civ. P. 56(c)(1)(B) states that a movant must "identify[] each claim . . . on which summary judgment is sought."

Plaintiff does not even try to analyze the uncontested facts against the elements of each of his six causes of action to determine whether those uncontested facts actually establish liability. Indeed, Plaintiff's brief ___does not even provide a single citation to the statement of undisputed___

---

[4] These 22 facts were not established because Defendants' asserted their Fifth Amendment rights. Indeed, the mere assertion of the Fifth Amendment without independent corroborating evidence is not sufficient to give rise to summary judgment. *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995); *Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924 (7th Cir. 1983). The 22 facts were established because Defendants stated in their answers that they would not contest them. (*See* Exs. 1 and 2, Dkt. 412 and 415 at ¶¶ 4, 6, 15-19, 21-29, 32, 45-46, 48, 56, 75.)

***material facts or a single case discussing the elements of his claims.***

Defendants' statement that they will not contest certain facts does not short circuit the requirement that those facts actually give rise to liability. The Court should deny Plaintiff's motion for its failure to do this analysis. *See, e.g., Pather-Brunton v. Illinois Nurses Ass'n,* No. 13-CV-3936, 2015 WL 13707821 at *1 (N.D, Ill. December 11, 2015) (summary judgment denied because the "brief in support . . . [did] not contain any citations to the [Local Rule 56.1 Statement]" and did not cite cases discussing the elements of the causes of action).

### B.     The PSUMF Contains A Large Volume Of Immaterial Facts.

Fed. R. Civ. P. 56(a) requires that the movant show the "material facts" supporting summary judgment.  Local Rule 56.1(a)(3) requires a statement of "material facts."  What is not contemplated is a party submitting scores of facts that are irrelevant, thus forcing the Court to wade through them. Plaintiff includes dozens of "facts" that have no relevance whatsoever to the substance of this motion. For example, in paragraphs 66-87 of the PSUMF, Plaintiff simply identifies documents in the court file and states the date of their filing, such as:

> 67. On September 14, 2017, the Adams Defendants filed their *Motion to Dismiss "Amended" Third Amended Complaint* (Dkt. No. 13) ("Adams Motion to Dismiss"), and *Memorandum in Support of Motion to Dismiss Complaint* (Dkt. No. 15).
> *    *    *
> 73. On October 20, 2017, David filed *Plaintiff's Response to Defendant's motion to Dismiss the Verified Amended Complaint* (Diane Case Dkt. No. 17).
> *    *    *
> 87. On August 15, 2018, David filed *Fifth Amended Complaint* against Adams, Bucon, Engbrecht, Diane and Xtreme. (Dkt. No. 387) ("Fifth Amended Complaint").

Nowhere in his motion or his brief in support does Plaintiff explain why such allegations are set forth in the PSUMF.  This pattern is repeated beginning at paragraph 65 and continuing through paragraph 141, leaving the Court with a large volume of unnecessary work.[5]

---

[5] Plaintiff also violated Local Rule 56.1(a)(3), which requires movant's statement of material facts to "consist of short numbered paragraphs."  The PSUMF violates this provision in numerous paragraphs.  For example, paragraph 115

### C. The PSUMF Contains "Facts" That Are Controverted By The Citation Provided.

Local Rule 56.1(a)(3) requires that the factual paragraphs make "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts." Plaintiff violated this rule by inexplicably including "facts" where the "support" identified is Defendants' ***denial*** of the fact asserted. For example, Paragraph 1 of the PSUMF states:

> 1. On April 16, 2014, Ronen Moyal ("Moyal") of Gladio Group Security arrived at David's Office and informed him that he had been hired by Diane to conduct surveillance on David. Moyal informed that David that his cell phone, David's Office, his Highland Park Residence and the Gold Coast Condominium are bugged.

Paragraph 1 cites ¶ 10 of Defendants' Answers (Exs. 1 and 2, Dkt. 412 [Diane] and 415 [Adams]), but ¶ 10 ***is not an admission.*** Instead, ¶ 10 of each Answer pleads "lack of knowledge" and pursuant to Fed. R. Civ. P. 8(b)(5), such an answer "has the effect of a denial." *In all, Plaintiff asserts 30 statements that Defendants lacked information as if they were admitted*. (*See* PSUMF at ¶¶ 1-3, 25-29, 35, 37-50, 52-56, 58-59, 64.) By operation of Fed. R. Civ. P. 8(b)(5), however, Defendants ***denied*** those facts. Fed. R. Civ. P. 56(c)(1) requires that a party relying upon a factual assertion "must support the assertion" with a citation, but obviously does not list "denial" in its recitation of acceptable materials for citations. The Court should simply deny the motion rather than burden itself with wading through the PSUMF to determine which statements comply with the rules.

### D. The PSUMF Seeks To Wish Away His Burden To Establish That The Devices Were Operational.

As set forth above, Defendants consistently have stated that they will require Plaintiff to carry his burden of proving that the devices were capable of actually recording and transmitting

---

has eight subparts and consists of 169 words. Paragraph 116 has seven subparts and consists of 150 words. (*See also* Dkt. 506 at ¶¶ 19, 28-29, 31-32, 50, 52, 53, 58.) Plaintiff also relies on inadmissible hearsay, but fails to include any foundational facts that establish any viable exception to the hearsay rules. (*E.g.*, *id.* at ¶¶ 1, 27-28, 39, 41.) Under Fed. R. Civ. P. 56(c)(2), Defendants have asserted objections to those assertions, and the Court should disregard them for purposes of the motion.

information – essential elements of Plaintiff's eavesdropping and wiretapping claims. Plaintiff, however, pretends that Defendants have conceded that issue. For example, paragraph 19 of the PSUMF states:

> On or around May 2015, Bucon dressed up as a Fed Ex delivery man and walked inside David's Office and placed a listening device inside the planter in David's Office. . . . This device had remote capability and could turn on and record conversations when activated from a remote location. Bucon also installed geo-tagging, remote controlled devices on David's cars that could transmit their location to a mobile device.

Plaintiff claims in Paragraph 19 that Defendants "did not contest" the allegations of this Paragraph, citing paragraph 30 of the Answer, but that is wrong. The answer by Diane and Adams' states:

> Based upon the assertion of her rights under the Fifth Amendment to the United States Constitution, Diane neither admits nor denies the allegations of paragraph 30. Without waiving her assertion of the Fifth Amendment, however, Diane does not contest the allegations of the first and third sentences of paragraph 30. As to the allegations of the second sentence of paragraph 30, Diane intends – as provided in the order issued on May 30, 2018 by U.S. Magistrate Judge Maria Valdez - to offer witnesses other than herself to contest whether the devices referenced in the second sentence of paragraph 30 were ever capable of performing the tasks described in the second sentence of paragraph 30.

Thus, Defendants' answer to Paragraph 30 ***expressly reserved the issue about the capabilities of the devices.*** In addition, and as cited in their response to Paragraph 19 of PSUMF, ***Defendants have evidence (not based on their own testimony) that the device did not work.***[6] Michael Bucon, the person referred to in Paragraph 30 and Plaintiff's star witness, testified that the devices he planted did not work:

```
 3      Q.    So you placed the device?
 4      A.    (Nodding.)
 5      Q.    You turned around and left?
 6      A.    Um-hmm.
 7      Q.    And then from the parking lot or from
 8   some other place -- where --
 9      A.    On the road.
10      Q.    -- you tried to access the device, and
11   it didn't work?
12      A.    Right.
13      Q.    Did you ever get it to work?
```

---

[6]A party's assertion of the Fifth Amendment in an answer alone is insufficient to establish a fact for purposes of summary judgment. *LaSalle Bank Lake View v. Seguban*, 54 F. 3d 387, 390 (7th Cir. 1995).

14    A.    No.

(DSAF ¶ 2, Ex. 4 at 110:3-14.)

Further, two alleged devices are missing and have not been produced to Defendants for inspection. (DSAF at ¶¶ 8-9.)   The Court should reject Plaintiff's incorrect assertion that Defendants have admitted that the devices were operational. Plaintiff has the burden of proof of this essential issue. For this reason alone, the Court must deny the motion as to Counts I and III.

## III.    IF THE COURT IS INCLINED TO DO THE WORK PLAINTIFFS DID NOT DO, IT STILL SHOULD NOT GRANT SUMMARY JUDGMENT ON LIABILITY.[7]

### A.    The Court Should Deny Plaintiff's Motion Concerning Count I (Illinois Eavesdropping Statute) Or On Count III (Federal Wiretap Act).

Plaintiff seeks summary judgment on Counts I (for eavesdropping in violation of 720 ILCS 5/14-2, "Eavesdropping Statute") and Counts III (for recovery of civil damages pursuant to 18 U.S.C. § 2520, "Wiretap Act"). Both the Eavesdropping Statute and the Wiretap Act require that the listening device be operational. *See Vega v. Chicago Park Dist.*, 2013 WL 3866512 (N.D. Ill. 2013); *Griffin v. City of Milwaukee*, 74 F.3d 824 (7th Cir. 1996). As to the Eavesdropping Statute, it is not enough to establish that the devices were merely ***capable*** of recording. *See Vega v. Chicago Park Dist.*, 2013 WL 3866512 (N.D. Ill. 2013). Rather, the plaintiff must demonstrate that the device ***actually worked*** to record the plaintiff's voice. *Id.* In *Vega*, Judge Zagel granted summary judgment for the defendant because plaintiff was "without basis to assert that her voice was actually recorded," even though the plaintiff claimed that defendant committed surveillance "on an instrument capable of audio recording." *Id.* at *1. Likewise, the Wiretap Act requires actual interception of plaintiff's conversations. *See Griffin v. City of Milwaukee*, 74 F.3d 824 (7th Cir.

---

[7] The Court should not allow Plaintiff to reply substantively to any specific argument concerning the elements of each claim because he failed to address those elements in his initial brief.  Plaintiff "cannot make conclusory and underdeveloped arguments in its opening brief and then deign to support and develop those arguments in his or her reply brief." *Johnson v. Root*, 812 F. Supp. 2d 914, 924 (N.D. Ill. 2011); *see also See Thompson v. AT&T Services, Inc.*, 17 C 3607, 2018 WL 4567714, at *6 (N.D. Ill. Sept. 24, 2018) (striking new arguments in reply).

1996).

Plaintiff has the burden of presenting evidence that such devices worked. *See Pather-Brunton*, 2015 WL 13707821 at *1 (Fed. R. Civ. P. 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary") (internal quotations omitted). Defendants have consistently contended that the devices were not capable of recording and transmitting information. Yet Plaintiff sets forth no facts supporting a claim that the devices were operational. As such, the Court must deny Plaintiff's motion with respect to both Counts I and III. Moreover, as set forth above, Michael Bucon testified that the devices did not work. (DSAF ¶ 2, Ex. 4 at 110:3-22, Ex. 5 at 60:15-61:22.) Thus, Defendants also have provided affirmative evidence creating an issue of material fact concerning an essential element of Counts I and III.

**B.      The Court Should Deny Plaintiff's Motion Regarding Count II (Intentional Infliction Of Emotional Distress).**

To prove Intentional Infliction of Emotional Distress ("IIED"), Plaintiff must show that: (1) Defendants' conduct was extreme and outrageous; (2) Defendants intended to inflict severe emotional distress, or knew there was a high probability their conduct would do so; and (3) Defendants' conduct caused severe emotional distress. *Franciski v. Univ. of Chicago Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003). To recover on an IIED claim, Plaintiff must show that:

> such severe emotional distress was actually and proximately caused by the extreme and outrageous conduct of defendant, done either with the intent to cause emotional distress or with a reckless disregard of the probability of causing such distress.
> * * * * *
> The emotional distress suffered must be severe. Although such things as fright, horror, grief, shame, humiliation and worry may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not sufficient. In order to be 'severe' the distress must be of such intensity and duration that no reasonable person could be expected to endure it. *Id.* at 924.

*Sale v. Allstate Ins. Co.*, 126 Ill. App. 3d 905, 922-23, 924 (1984). Whether alleged conduct is

"extreme and outrageous" and whether resulting distress was severe enough for recovery are both inherently jury questions. Indeed, the standard is "quite high." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 747 (7th Cir. 2008).[8]

Plaintiff's attempt to obtain summary judgment on his IIED claim is improper because "the question of outrageousness of [defendant's] conduct is in these circumstances an issue properly reserved for a jury determination." *Cotton v. Alexian Bros. Bonaventure House*, 2003 WL 22110501, at 811 (N.D. Ill. 2003). Defendants have found no case where a court granted summary judgment for a *plaintiff* on the basis that the defendant's conduct was extreme and outrageous. The reason is obvious – whether conduct is regarded by a community as extreme or outrageous – is a quintessential question for a jury to decide. *Xie v. City of Chicago*, 2016 WL 6193981, at *11 (N.D. Ill. 2016) (denying summary judgment on IIED claim as the questions of fact "must go [to] the jury").

In *Xie*, for example, the court noted that whether conduct by defendants is considered extreme and outrageous "generally must be evaluated by the jury based on all of the facts and circumstances" and, therefore, the court declined the "invitation to take this issue from the jury." 2016 WL 6193981, at *12. The Court should likewise here decline to take from the jury the question of whether Defendants' conduct was extreme and outrageous.

Similarly, as to the second element – the severity of distress alleged – courts only intervene where the alleged distress is "so severe that no reasonable man could be expected to endure it."

---

[8] As to the first element, a plaintiff does not recover for conduct amounting to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Lopacich v. Falk*, 5 F.3d 210, 212 (7th Cir. 1993) (internal quotations omitted). Moreover, whether conduct is "extreme and outrageous" is judged on an objective standard based on the facts and circumstances of each case. *Franciski*, 338 F.3d at 771. To recover, the defendant's conduct must extend "beyond the bounds of human decency" and be considered "intolerable" in a civilized community. *Lewis*, 523 F.3d at 747. In other words, a recitation of the facts to an average member of the community would "arouse his resentment against the actor, and lead him to exclaim[:] 'Outrageous!'" *Id.*

*McGreal v. Vill. of Orland Park*, 850 F.3d 308, 314-15 (7th Cir. 1993) (internal quotations omitted) (affirming summary judgment for defendant on IIED claim, noting that "garden-variety" emotional distress was insufficient to meet the standard of severity required for an IIED claim). Again, the question of whether Plaintiff's distress meets this standard is a question for the jury. *Xie*, at *13.[9]

### C. The Court Should Deny Plaintiff's Motion Regarding Count IV (Intrusion Upon Seclusion).

To prove a claim of intrusion upon seclusion, Plaintiff must show: (1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering. *Bovay v. Sears, Roebuck & Co.*, 2017 IL App (1st) 152672-U, ¶ 50, *appeal denied,* 84 N.E.3d 363 (Ill. 2017). As with IIED, the severity of a defendant's conduct is ill-suited for summary judgment – particularly because a plaintiff must show not only that the conduct was offensive, but "*highly offensive*" to a reasonable person. *Id.* at ¶ 61 (emphasis in original). Whether conduct is "highly offensive" is a fact question. *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 981 (1990). And, just as with IIED, Defendants have found no cases where a court granted summary judgment for a *plaintiff* on an intrusion upon seclusion claim.

In addition, as with Counts I and III, Plaintiff's motion leaves open the question of whether the devices actually worked. Plaintiff has asserted no such facts.

Finally, an issue of material fact exists as to whether the attorney-client conversations Defendants are alleged to have overheard in fact happened during the time at issue. Plaintiff alleges that Michael Bucon planted the first listening device in May 2015 and that the last listening device was discovered on August 11, 2015. (Dkt. 387, ¶¶ 30, 70-71.) Plaintiff contends that the private

---

[9] In addition, there are many facts that show that Plaintiff did not suffer any emotional distress. Defendants' unrebutted psychological expert opined that David has suffered no trauma from Defendants' alleged actions. (DSAF ¶¶ 27-28.)

conversations were privileged communications between Plaintiff and his attorney, Michael Ettinger. (*See, e.g.,* Exs. 1 and 2 at ¶ 25.) The deposition testimony of Mr. Ettinger, however, contradicts this assertion. Specifically, Mr. Ettinger testified that the conversations he had with Plaintiff occurred while Aaron Israel was still living and involved discussions about visitations between Plaintiff's and Harey's children and Aaron. (DSAF ¶ 25, Ex. 25, 17:11-18:8.) *Ettinger Deposition*, 17:11-18:8.) Mr. Ettinger's testimony creates a dispute of material fact, as Aaron passed away in October 2014 – well before the spring and summer of 2015. Summary judgment is therefore improper.

### D. The Court Should Deny Plaintiff's Motion Regarding Count V (Trespass).

#### i. <u>Trespass to Real Property.</u>

The Court should reject Plaintiff's trespass claim relating to the alleged intrusion on his company's office because Plaintiff is not the "real party in interest." (*See* Fed. R. Civ. P. 17(a)). Specifically, Plaintiff is not the lessee of the office space – Learsi, Co. is. (DSAF ¶¶ 23-24). The Learsi, Co., therefore, is the real party in interest with respect to Plaintiff's claim for trespass to real property. *Frank v. Hadesman & Frank*, 83 F.3d 158 (7th Cir. 1996) ("Illinois follows the widespread rule that an action for harm to the corporation must be brought in the corporate name"). Accordingly, the Court should deny Plaintiff's motion as to Count V.

#### ii. <u>Trespass to Personal Property.</u>

Plaintiff alleges that Defendants trespassed on his personal property by "install[ing] GPS devices, without authorization, in [Plaintiff's] vehicles…" (Dkt. 387, ¶ 118). In Illinois, to recover for trespass to chattels, a plaintiff must demonstrate that he suffered "an injury to or interference with possession, with or without physical force." *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 761 (N.D. Ill. 2015). Additionally, a plaintiff must show that the dispossession of property resulted in damages. *Antonelli v. Sherrow*, 2005 WL 2338813, at *10 (N.D. Ill. 2005), *aff'd*, 246 F.App'x

381 (7th Cir. 2007) (denying summary judgment for plaintiff on trespass to chattels claim plaintiff could not establish damages, as computer was returned to plaintiff a year later in same condition as when taken); s*ee also Smith*, at 761-62 (dismissing trespass to chattels claim against police officers who took and threw plaintiffs' personal belongings on the ground, where plaintiffs failed to allege that defendants' conduct "harmed or diminished their personal belongings").

Here, Plaintiff offers no evidence – not even an allegation – of any harm to Plaintiff's vehicles. As such, the Court should deny Plaintiff's motion with respect to this claim.

### E. The Court Should Deny Plaintiff's Motion Regarding Count VI (Conspiracy).

The Court should likewise deny the motion with respect to Plaintiff's civil conspiracy claim. Unlike the crime of conspiracy – in which the agreement itself is enough to trigger liability – a mere "agreement to commit a wrongful act is not a tort, even if it might be a crime." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). "A cause of action for civil conspircy exists *only* if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort." *Id.* (emphasis added); *see also Bisharat v. Vill. of Niles*, 10 C 00594, 2014 WL 2514510, at *10 (N.D. Ill. June 4, 2014) (granting defendant summary judgment on civil conspiracy claim because, among other things, plaintiff failed to establish an independent tort); *Sain v. Nagel*, 997 F. Supp. 1002, 1017 (N.D. Ill. 1998) (same).

Here, because Plaintiff is not entitled to summary judgment on any of his tort claims, the Court must deny his conspiracy claim. In other words, the conspiracy claim is entirely parasitic on those claims. Since those claims all fail, however, the Court has no basis to enter judgment on the conspiracy claim.

## CONCLUSION

Based on the foregoing and Defendants' response to the PSUMF and the DSAF, the Court should deny Plaintiff's motion for partial summary judgment and grant summary judgment in favor of Defendants on Count V.

Dated: November 16, 2018              Respectfully submitted,

| | |
|---|---|
| Daniel Lynch (6202499) | DIANE ISRAEL |
| Mindy S. Schwab (6296233) | /s/ *Daniel Lynch* |
| Lynch Thompson, LLP | By: /s/ *Mindy S. Schwab* |
| 150 S. Wacker Drive, Suite 2600 | Two of her attorneys |
| Chicago, Illinois 60606 | dlynch@lynchthompson.com |
| Tel: 312 346 1600 | mschwab@lynchthompson.com |

JAMES ADAMS AND XTREME PROTECTIVE
SERVICES LLC

| | |
|---|---|
| Jonathan M. Cyrluk (6210250) | By: /s/ Jonathan Cyrluk |
| Carpenter Lipps & Leland, LLP | One of their attorneys |
| 180 N. LaSalle Street | cyrluk@carpenterlipps.com |
| Chicago, IL 60601 | |
| Tel: 312-777-4300 | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that he caused a copy of this Joint Memorandum In Opposition to Plaintiff's Motion for Partial Summary Judgment to be served on counsel of record by electronic mail on this 16th day of November, 2018, including to the following parties:

> Ariel Weissberg
> Weissberg & Assoc. Ltd.
> Counsel to Plaintiff
> 401 S. LaSalle #403
> Chicago, IL, 60605
> Hava@weissberglaw.com
> ariel@weissberglaw.com

> _/s/ Daniel Lynch_____
> One of the Attorneys for Diane Israel